UNITED STATES STAMPING Co. *v.* KING and others.

(*Circuit Court, S. D. New York.* August 23, 1879.)

1. PATENT No. 119,705—CUSPIDOR—MOTION FOR PRELIMINARY INJUNCTION—ANTICIPATION—VALIDITY.

Letters patent No. 119,705, granted October 10, 1871, to Eugene A. Heath, for improvement in cuspidors, on a motion for preliminary injunction, *held, not anticipated* by letters patent No. 106,194, granted August 2, 1870, to William E. Topham, for improvement in spittoons; also, *held valid* and *motion granted.*

2. SAME—SAME—ANTICIPATION—INFRINGEMENT.

Heath's invention, consisting of a metallic cuspidor, in form essentially a spheroidal body, with conical mouth flaring outwards, formed of three metallic parts, the lower being heavier, and the middle and upper being lighter, than in then-existing devices, the lower part extending up to the longest diameter of the spheroid, the middle part of a dome shape and joined to the upper and lower parts, the upper part being an inverted cone forming a mouth, the whole not being liable to fracture, and having the capacity of returning to an upright position of itself, from a position not upright, when left free, *held, not anticipated* by Topham's invention, consisting of a *papier mache* spittoon with a weight incorporated between the upper and lower layers of the bottom portion, tending to retain the vessel in its proper position when force is applied to tilt or upset it; and *infringed* by defendant's cuspidors, constructed of three metallic

parts of substantially the same shape as Heath's, with similar joints, but whose lower part is a compound piece, a partition being introduced a little above the bottom, and parallel therewith, so as to form a chamber over the whole extent of the bottom, the chamber being filled with heavy material, such as iron filings, to serve as a weight.

3. RE-ISSUE—EFFECT ONLY ON SUBSEQUENT CAUSES OF ACTION.

A re-issued patent has the same effect and operation in law as though it had been originally filed in the corrected form, only on the trial of actions brought on it for causes thereafter arising, and has no such effect in any other case or for any other purpose.

*Frederick H. Betts,* for plaintiff.

*Charles F. Blake,* for defendants.

BLATCHFORD, C. J. This is a motion for a preliminary injunction founded on letters patent granted to Eugene A. Heath, October 10, 1871, for an "improvement in cuspidors." The specification says:

"Be it known that I, Eugene A. Heath, of New York city, in the state of New York, have invented certain new and useful improvements in cuspidors, of which the following is a specification setting forth what I consider the best means of carrying it into effect. The accompanying drawing forms a part of this specification. Figure 1 is a vertical section, showing the construction in its proper position; and figure 2 a double view, the strong lines being a section in an upset or overturned position and the dotted lines an elevation in its upright position. Similar letters indicate like parts in both the figures. I form separately three metallic parts and unite them, after suitable preparation, tightly and strongly by soldering. The lowermost, A, is of cast iron, thick at the extreme bottom and thinner towards the top Its upper edge is rabbeted and nicely finished to receive the lower edge of the sheet metal part, B, and form a flush exterior surface therewith, as shown. B is a piece of sheet iron pressed in a Grimshaw press, or otherwise formed in the proper dome shape, and of exactly the proper diameter, and with a vertical flange at its upper edge, as shown. C is a conical piece which may be similarly formed into shape. Its lower edge has a flange which matches closely inside the flanged upper edge of B, and its upper edge is turned over by the ordinary tinsmith's tools, or otherwise, and made to embrace a wire ring, D, to stiffen it; the construction of which is obvious. On soldering the several joints smoothly, and properly decorating the surfaces, there results a metallic cuspidor, not liable to fracture, and lighter than ordinary cuspidors on its upper side, and much heavier than ordinary cuspidors on its lower side. One of the important ends attained by my invention is extraordinary stability. If the cuspidor is upset by any chance, and caused to lie for a time in the position indicated by the strong lines in figure 2, the excess of weight in its

base, taken in connection with its form, causes it to return again of itself to its proper upright position, as soon as the disturbing cause is removed. I have shown the interior as formed with an offset, below which is materially thicker than above, and prefer to so cast it. The upper portions may be formed with some success by spinning suitable thin brass. The junctions of the several parts may be further secured by causing one part to cling upon a bead in addition to the soldering. In some cases rivets, or the like ordinary or suitable fastenings, may be employed. I claim a metallic cuspidor having a heavy base, A, and a light upper portion, B, C, formed and combined substantially as and for the purposes herein set forth."

It is plain that the invention claimed is a metallic cuspidor, formed of three metallic parts, the lower part being heavier than in ordinary then-existing cuspidors, and extending up to the largest diameter of the spheroid, the middle part and the upper part being lighter than in ordinary then-existing cuspidors, the middle part being of a dome shape, and being joined below to the lower part, and above to the upper part, and the upper part being an inverted cone in shape, flaring outwards, and forming a mouth; the whole structure not being liable to fracture, and having the capacity of returning to an upright position, of itself, from a position not upright, when left free, and being essentially of the form shown in the drawings of the patent. That form is a spheroidal body, with a conical mouth, flaring outwards.

Mr. Henry B. Renwick, the plaintiff's expert, says in his affidavit:

"A cuspidor is a vessel of peculiar shape, which may be defined as spheroidal, with a conical mouth, and such vessels were first seen by deponent some 25 years since. These, and all other cuspidors seen by deponent until the last few years, were made of china or porcelain, and came into use in houses of the better class, where the old-fashioned spittoons were considered vulgar and consequently inadmissible. These china cuspidors were costly and fragile, and, moreover, easily upset, as the base was small as compared with the whole diameter, and as the form of the vessel was flaring outwards and upwards from its base. In this latter respect, that is, want of stability, so far as real utility was concerned, the cuspidor was much inferior to the old-fashioned spittoon, which is so flat and wide based that it is really unupsettible or non-upsettible by accident, the only way of upsetting it being by taking it by hand and turning it over, or by some other way deliberately contrived for the purpose of upsetting it. * * * Prior to the date of Heath's invention vessels

loaded at the bottom, so as to make them more stable, were well known, * * * It was easy, therefore, after the idea was once conceived, to load a cuspidor at bottom in a well-known way, so as to make it more stable, either by thickening the china at bottom, or cementing a weight into the bottom. But this would not have removed the whole difficulty. It was necessary to make them strong, not frangible like china or porcelain, and to make them cheap; and Heath conceived the idea of making them of metal, so that they should be strong, and of constructing them in at least three pieces of metal, so that they should be cheap. Owing to the peculiar form of the cuspidor, it is difficult, if not impossible, to form it of one piece of sheet metal; but Heath saw that, by dividing the body of the cuspidor at the equator, if it may be so termed, it could be formed of two pieces, each having all its flare in one direction, so that such hemispheroidal parts would be easily formed by casting, stamping, or spinning. The funnel mouth-piece he then made in a separate piece, and as it, when separate from the body, flares all in one direction, it could be easily and cheaply formed. In forming these pieces, the lower part of the body was made much the thickest, and, when the three parts were put together and attached to each other, there resulted a strong, cheap, metallic, self-righting cuspidor, as elegant in form as those made of china, and capable of being decorated, if desired. As far as deponent knows, Heath was the first to make a metallic cuspidor, or a self-righting cuspidor, but he does not claim broadly a metallic vessel in shape of a cuspidor, or a self-righting cuspidor, or a vessel made of three pieces, but the patent defines his invention as consisting in a metallic cuspidor made of three pieces of special form, viz.: one for the bottom of the body, one for the top thereof, and one for the conical mouth-piece, joined at the equator and at the small end of the mouth-piece, when the piece of metal forming the bottom or lower portion of the body is heavier than the other parts, so as to give stability and self-righting capacity. If the cuspidor was made of one piece of metal it would not be Heath's. If made of several pieces, with the lines of junction in substantially different places from those represented in Heath's patent, it would not be Heath's. For instance, the lines of seam might be vertical, and each include a part of the body and of the mouth-piece. Even if the cuspidor was made of Heath's three pieces, formed as he forms them, and joined where Heath joins them, but with the bottom piece no heavier than the others, the cuspidor would not be the one referred to in Heath's claim."

The considerations thus set forth commend themselves as founded in good sense and sound reason.

The cuspidor involved in this case as the defendants' cuspidor is made of three pieces of metal,—one for the bottom, one for the upper part of the body, and one for the conical mouth-piece. These pieces are shaped as Heath's are, and are joined horizontally at the equator of the body,

and at the ring where the conical mouth-piece meets the upper part of the body, as Heath's are. They all flare in one way, have no re-entering angles or curves, being in this respect like Heath's, and can be made easily and cheaply by stamping or spinning. The piece which forms the bottom is a compound piece, a partition being introduced a little above the bottom and parallel therewith, so as to form a chamber over the whole extent of the bottom, the partition forming the bottom of the receiver. The chamber thus formed is filled with a heavy material, such as iron filings, to serve as a weight. This compound piece is thus, as a whole, thick and heavy compared with the upper parts. It is manifestly the equivalent of Heath's single thick and heavy bottom piece. The structure, as a whole, falls within the definition above given of the invention claimed in the Heath patent.

The defendants attack the novelty of Heath's invention. They introduce a patent granted to William H. Topham, August 2, 1870, for an "improved spittoon." The specification states the invention to be an "improvement in spittoons and other vessels." It says:

"My invention is designed to be applied to spittoons, pails, and other vessels made of paper, which, owing to the lightness of said material, are liable to be easily overturned or displaced; and the invention consists in incorporating with the bottom or lower part of the vessel a weight so arranged that, in case of force b ing applied, no matter from what side, to tilt or upset the vessel, said weight will have the effect of retaining it in its proper position, or of retuim ng it thereto, and so that, when the vessel is thrown down to its place, the weight will cause it to readily adjust itself to a proper bearing on the surface on which it is intended to rest. Referring to the accompanying drawing, A represents a spittoon made of paper, the bottom, a, of which is provided with a weight, B, concentrically arranged in relation with said bottom, and preferably disposed between an upper and lower laye used in the construction of the bottom, whereby said weight is protected, and may be retained in place without any special fastenings, and the vessel possesses all the proper ies and advantages of a paper one, with the stability of one made of heavier material, and readily adjusts itself to a proper position in case of being carelessly thrown down or of being pushed or tilted from any side. Said weight may be made of any material of suitable specific gravity, the black oxide of iron, among others, answering for such purpose."

The claims of the patent are two:

"(1) A spittoon made of paper, weighted at its bottom or lower part by a heavier material to secure its stability, and to enable it to right itself, in case of being tilted, substantially as specified. (2) The arrangement of a weight, B, between two thicknesses of layers, of which the bottom, *a*, or lower part of the paper vessel is composed, essentially as and for the purpose herein set forth."

A suit in equity was brought on the Heath patent, in the circuit court of the United States for the district of New Jersey, in June, 1875, by Lorin Ingersoll, the then owner of that patent, against Mary Turner and William Turner. They set up the Topham patent as a prior patent, containing the Heath invention, and alleged that they were licensees under a re-issue of the Topham patent. Proofs were taken and the case was brought to a hearing before Judge Nixon. In his decision he says:

"The word 'cuspidor' is derived from the Portuguese word '*cuspo*,' to spit; 'cuspidor,' a spitter. The English cuspidor is a spittoon of a peculiar form. Not much stress, therefore, can be laid upon the fact that Topham calls his patent 'an improvement in spittoons,' and Heath calls his 'an improvement in cuspidors.' The difference between a spittoon and a cuspidor is one of form, and the form of the cuspidor is not new. The characteristic and valuable feature of both articles is their self-righting quality, arising from the weighted bottoms. The functions of the weighted bottoms in each are the same, and Topham has the mérit of being the older. It is in evidence that he made *papier mache* cuspidors with weighted bottoms as early as June or July, 1871, anterior to the date of the patent to Heath. What, then, has Heath done? He has improved a cuspidor by increasing the weight of the bottom, whereby it is rendered less liable to upset, using the same means that Topham applied to spittoons and producing the same results. He has substituted sheet metal for other, and it may be, less appropriate materials for the manufacture, but there was no invention in the mere change of material; and his method of construction, to-wit, the putting together the cuspidor in three pieces, is so obvious, that nothing was claimed for it in the patent, and nothing ought to have been. Any skilled mechanic would naturally adopt it without the exercise of inventive talent. As the defendants justify under the Topham patent, there must be a decree in their favor, and it is ordered accordingly."

This decision was made in June, 1877. There was very little testimony in the New Jersey suit. There was no expert testimony on either side. The date of the Heath patent,

October 10, 1871, was the earliest date assigned to Heath's invention, and it appeared that, before that date, Topham had made *papier mache* cuspidors with weighted bottoms. Now, it is shown in this case that the application for Heath's patent was filed before Topham made a *papier mache* cuspidor with a weighted bottom. This condition of the evidence destroys very much the force of the New Jersey decision, and makes it uncertain, at least, what the New Jersey decision would have been, if such evidence had been in that case, and if the expert testimony in this case had been in that case, in view of the facts that the shape and material and mode of construction of the Heath article are so entirely different from the shape and material and mode of construction of the article described in the Topham patent.

It is a striking fact that prior to the introduction into use of the Heath metallic, loaded-bottom cuspidor, there was not on sale in the market any metallic, loaded-bottom cuspidor. The Topham loaded-bottom *papier mache* spittoon is not shown to have suggested to any one the making of a metallic, loaded-bottom cuspidor like that of Heath's. The metallic cuspidors of Musgrove were not loaded at the bottom, and were merely experimental, and whatever invention there was in them was incomplete and was abandoned. But the history of Musgrove's experiment, as given by himself, goes far to show that the making of Heath's cuspidor was not the obvious thing that it is now, after the event, claimed to have been. Musgrove failed to see what was needed, and because he so failed he stopped short of the Heath invention. The Dalby metallic spittoon did not embody the features of Heath's metallic cuspidor. It was not a cuspidor, and was not loaded at the bottom, and was not self-righting, and the third piece forming the top was not joined to the upper part of the body but rested on it. The Manning tea-pot and the tin pitcher are neither of them loaded at the base, nor are they self-righting, nor did they ever suggest the making of such a cuspidor as Heath's, with a loaded bottom. Many articles had, prior to Heath's invention, been made of three or more pieces of sheet metal joined together by horizontal seams,

but the question as to whether it would be useful or practical to make a metallic cuspidor of three pieces of metal, in the way suggested by Heath, and with a loaded bottom, still remained for the exercise of invention. The defendants sell cuspidors made by Jewett & Sons, of Buffalo, who are licensees under the Topham patent. But Jewett & Sons do not make the structure of Topham. They make substantally that of Heath. The Topham structure is lacking in the essential features of the Heath structure. Topham's spittoon is not a cuspidor, and is not metallic, and is not made of three parts joined together. In Heath's cuspidor the rounded form and the load in the base co-operate to make the structure self-righting. In Topham's spittoon there is no such co-operation between the form and the weighted base, as the sides are nearly straight and the bottom is not rounded. The porcelain cuspidor, easily upset, easily broken, sure to to remain upset when upset, had been in existence for years. Its disadvantages, the desirability of remedying its faulty features, had been obvious for years. But the remedy was not obvious. Topham's structure furnished no remedy, because, although it had a loaded bottom, it was still a spittoon and not a cuspidor, and had not the points of advantage which the porcelain cuspidor had in unison with its disadvantages. Nor did any remedy come till Heath's cuspidor came. Topham, on the twenty-ninth of July, 1873, obtained a re-issue of his patent, with broader claims than those of his original patent, not confining his invention, as in the original, to vessels made of paper, but extending it to all spittoons or similar vessels weighted at the bottom. Whatever may be the force of the re-issued patent in suits brought on it, it can have no effect as against the Heath patent in this suit, because it is subsequent to that patent. A re-issued patent has the same effect and operation in law as though it had been originally filed in the corrected form, only on the trial of actions brought on it for causes thereafter arising, and has no such effect in any other case, or for any other purpose. Act of July 8, 1870, § 53; 16 St. at Large, 205; Rev. St. § 4916.

The Heath cuspidor was first introduced into the market

in the summer of 1871. It was immediately appreciated by the public. In the first season 20,000 were made; in the second, 40,000; in the third, over 80,000. Since that they have been sold in large and increasing numbers, and have been constantly growing in favor with the public. This result, in connection with all the differences, before adverted to, between the Heath cuspidor and prior structures, leads to the conclusion that the invention claimed in the Heath patent is a patentable invention, and that the patent is valid. The case falls within the principles laid down in *Smith* v. *Goodyear Dental Vulcanite Co.* 93 U. S. 496, and in *Hicks* v. *Kelsey*, 18 Wall, 670.

It is urged that, as the decision in the New Jersey case was one on final hearing, this court ought, on a motion for a preliminary injunction, to follow it, from comity, until it is overruled by the supreme court. But, in addition to the suggestions before made in regard to the New Jersey suit, it appears that a large number of suits have been brought on the Heath patent, and that in none of them but the New Jersey suit has there been a decision against the validity of the patent. In some of these suits the defendants have submitted to injunctions, after investigating the subject. In two suits at law the plaintiff recovered against such defences as were set up. In several suits in equity there have been injunctions and decrees for the plaintiff. This court, in *Ingersoll* v. *Benham*, 14 Blatchf. 362, decided that the Topham patent did not show the combination covered by the Heath patent. The Manhattan Brass Company took a license under the patent for a royalty. Several firms started to manufacture the cuspidors, but, on being notified that they would infringe the patent, they abandoned the manufacture. Some of these firms had licenses under Topham's re-issued patent. No one is now infringing the patent by manufacturing the Heath cuspidor, except the Turners and Jewett & Sons. The Meriden Britannia Company was enjoined and then took a license. All these considerations make a case in which it is proper to grant a preliminary injunction.

In a direct suit brought by the owner of the Heath patent,

for infringement, against Jewett & Sons, in the northern district of New York, it has been decided by Judge Wallace that the decision in the New Jersey case cannot avail Jewett & Sons as a plea of *res adjudicata* or estoppel. That decision must control on that question, at this stage of this case.

The questions on which this motion turns are questions of law as to the construction of the Heath specification and as to the patentability of the invention. There is no disputed question of fact to be elucidated by the taking of plenary proof for final hearing.

The technical point is made that the only infringement shown is the sale by the defendants of two cuspidors prior to the assignment of the patent to the plaintiff. This is so. But the case has been argued, on the part of the defendants, on the assumption that such sale took place after the assignment to the plaintiff, which was March 4, 1879, and the date of the jurat to the bill, which was March 5 1879, and on the assumption that the defendants have continued to sell the infringing cuspidors.

I have examined this case with care, and the more because of the views expressed by my brother Nixon, and have arrived at the undoubting conviction that the plaintiff is entitled to an injunction. It is, therefore, granted.