BRAZEL *v.* THOMPSON SMITH'S SONS.[1]

1. CONTRACTS—CONSIDERATION—PATENT—ROYALTIES.

Where two Federal courts of equal rank and jurisdiction have rendered conflicting decrees with reference to the validity of a patent, the patent and the decree sustaining it afford a sufficient consideration for a subsequent contract for royalties entered into by the parties with full knowledge of the decree holding the patent invalid.

2. SAME—ROYALTIES—QUESTION FOR JURY.

Where, in an action for royalties on a patented article, plaintiff admitted that, after a decree holding the patent invalid, there was a serious dispute as to the terms of the contract, but did not admit that defendant had withdrawn from the contract prior to the making of certain sales for which roy-

[1]Rehearing denied January 23, 1906.

alties were claimed, as defendant testified, it was proper to leave the question to the jury and to charge that if defendant notified plaintiff, as claimed, that he would not longer recognize the patent or the contract before the sales in question, plaintiff could not recover royalties thereon.

3. Limitation of Actions—Account—Action on—Items.

Where, in an action for royalties, there is evidence that certain charges are items of an open running account on which payments have been made within six years prior to the commencement of the suit, there is no error in refusing to charge that the items arising more than six years prior to the suit are barred.

Error to Cheboygan; Emerick, J., presiding.   Submitted October 10, 1905.   (Docket No. 28.)   Decided November 7, 1905.

Assumpsit by Peter B. Brazel against Thompson Smith's Sons for royalties on a certain patent.   There was judgment for plaintiff, and defendant brings error.   Affirmed.

*Frost & Sprague*, for appellant.

*C. S. Reilley*, for appellee.

Blair, J.   On May 13, 1884, a patent bearing that date was issued by the government of the United States to the plaintiff, covering certain improvements in snow plows.   On March 2, 1885, plaintiff and defendant entered into a contract, whereby the defendant was granted the right to manufacture and sell snow plows covered by the patent in the territory embraced in the States of Michigan and Wisconsin, for a period of 10 years, in consideration of which, the defendant agreed to pay the plaintiff a royalty of $30 upon every machine sold within that territory, and a royalty of $40 upon each machine sold outside of that territory.   On December 14, 1894, this contract, under which defendant had manufactured and sold snow plows up to that time, was extended by an indorsement upon the original contract—"to the limit of said within patent, and to include the whole of the United States ex-

cept Minnesota," etc. It having been brought to the attention of plaintiff that machines were being manufactured and sold which infringed his patent, the plaintiff brought suit to restrain the alleged infringement of said patents in the United States circuit court for the western district of Wisconsin. This case having been heard upon pleadings and proofs, a decree was entered by the court on the 25th day of October, 1898, whereby the plaintiff's patents were held invalid, and his suit dismissed (*Brazel* v. *Supply Co.*, 89 Fed. 584). After the decision annulling plaintiff's patents, the defendant continued to manufacture and sell the snow plows, and to pay plaintiff the same royalty as before, at least up to August, 1901. Upon this latter date the parties had a discussion of the effect of the decision of the Federal court in Wisconsin, and defendant claims that an agreement was then made, whereby the defendant was to pay plaintiff $15 per plow for all plows manufactured and sold. The plaintiff, however, contends that such was not the agreement, but that $15 was to be received as a royalty only in case 100 township plows were sold, which, not having been accomplished, he was entitled to the original price agreed upon of $30.

In December, 1903, the parties having disagreed as to the terms of the agreement under which they were operating, and being unable to arrive at a satisfactory settlement, the plaintiff brought this action. The plaintiff's claim, as finally presented to the jury, was made up of the following eight items:

"1. Balance per defendant's statement, $88.25.

"2. Commission on plow sold at Manistique, $25.

"3. Royalty on 34 plows sold outside of Michigan and Wisconsin previous to December 14, 1894, at $10 each, $340.

"4. Royalty on plows sold in Minnesota after December 4, 1894, 12 plows, at $10 each, $120.

"5. Amount charged to Brazel on caulk sharpener account, $338.77.

"6. 135 plows, royalty allowed at $15, which should have been $30 each, $2,025.

"7. 18 plows, manufactured since February 26, 1903, to December 14, 1903, at $30 each, $540.

" 8.  Three plows sold in Minnesota, balance not credited in account, at $25 each, $75."

It is conceded that plaintiff was entitled to judgment for the first, second, and fifth items, amounting to $452.02, and the assignments of error relate solely to the action of the court with reference to the other items.  The case was submitted to the jury, and a verdict rendered for $1,037.75 in favor of the plaintiff.  Defendant alleges:

*First.*  Error in the refusal of the court to charge in accordance with his request to charge and his theory of the case that the decree of the Federal court for the western district of Wisconsin, in chancery, having invalidated the plaintiff's patent, he could not recover for any royalties accruing subsequent to that decree, because there was a complete eviction of defendant and an entire failure of consideration to support the contract thereafter.

*Second.*  As to the item of $540, it is further claimed by defendant that these 18 plows were sold by defendant after November 1, 1903, and that no promise was ever made to pay these royalties, but that, on the contrary, defendant had notified plaintiff previous to the sale of these plows that his contract would not be recognized any further by defendant.

*Third.*  Defendant also contends that the court erred in refusing to give its fourth request to charge, withdrawing from the consideration of the jury, as being barred by the statute of limitations, the item of $340, for plows sold outside of Michigan and Wisconsin, previous to December 14, 1894.

*First.*  On the 6th day of June, 1889, a decree was rendered by the circuit court of the United States for the eastern district of Michigan covering the patents in this case, as follows:

" This case having come on to be finally heard upon the pleadings and proofs, and having been argued by the counsel for the respective parties, and the pleadings and

proofs herein having been duly considered, it is hereby on this 6th day of June, 1889, ordered, adjudged, and decreed that the letters patent referred to in the complainant's bill, being letters patent of the United States granted unto Peter B. Brazel, on the 13th day of May, 1884, numbered 298,441, is a good and valid patent of the United States, and that said Peter B. Brazel was the first and original inventor of the improvements therein described and claimed therein, and that the said defendant, by the use of the snow plow described in the said pleadings and proofs, has employed the invention described and claimed by the first claim in said letters patent, and that the said defendant has infringed the said patent and upon the exclusive rights of the complainant under the same. And it is further ordered, adjudged, and decreed that the said Henry Pangborn, his clerks, attorneys, agents, servants, and workmen, be perpetually enjoined and restrained from, directly or indirectly, making, using, or selling to others any of the machines containing or embodying the invention described or claimed in said letters patent, numbered 298,-441.

" And it is further ordered, adjudged, and decreed that the complainant is entitled to recover from the defendant the profits which he has received or made, and which have accrued to him from said infringement of the aforesaid letters patent, and also the damages which the complainant has sustained thereby. And it appearing to this court that the said complainant has waived his claim to profits and actual damages from said defendant, it is hereby ordered, adjudged, and decreed that he do recover from the said defendant the sum of six cents nominal damages in that behalf sustained.

" And it is further ordered, adjudged, and decreed that the said complainant do recover of the said defendant his costs in this case to be taxed, and that the said complainant have execution therefor."

From this decree an appeal was taken to the Supreme Court of the United States. On March 27, 1893, the appeal was dismissed for the reason that the parties had failed to print the transcript of the record.

The first claim of the patent of 1884, referred to by the Federal court in Michigan, as infringed by the defendant Pangborn, is stated by the Federal court in Wisconsin, as follows:

"(1) The combination with the plow frame or main frame and the supporting runners of the adjustable plows, G, the adjustable pivoted wings, E, and hinged bars, F, substantially as and for the purpose set forth."

The infringement of this claim seems to have been the only infringement of the 1884 patent before either court. In the answer in the Wisconsin case, the defendant sets up, in answer to the allegation of the bill, that "the validity of said patent, number 298,441, was affirmed after severe contestation, viz., by a decree of the circuit court of the United States for the eastern district of Michigan," etc.; that it was not bound by the decree because not a party or privy to the proceedings; and that "no construction was in such or any proceedings placed upon the claims of the said patents that would bring within its terms or make the said claims cover or include any device made or used by this defendant; that, on the contrary, the construction expressly given to the claims by the court in said proceedings expressly excludes the device used by the defendant, as also does the language of the claims themselves." Judge Bunn, in rendering the decision of the Wisconsin court, at the conclusion of his opinion, uses the following language, which seems to recognize the decree of the Michigan court as correct so far as it went, viz. :

"I think the evidence shows that the complainant is not by any means a pioneer in the art of making snow plows, and should be limited to the specific construction shown in his patent.    These the defendant does not use."

If, however, it be conceded that defendant correctly interprets the decree of the circuit court for the western district of Wisconsin as overruling the decree of the circuit court for the eastern district of Michigan, still, we think the court correctly declined to instruct the jury that, because of that decree, there was a complete eviction of defendant, and no consideration for the subsequent dealings and agreements of the parties. Such dealings and agreements were made with full knowledge of the Wisconsin decree, and were valid, unless the effect of that

decree was to entirely avoid them or deprive them of any consideration whatever. In determining this question, the decree of the Federal court in Michigan cannot be ignored. That decree proceeded from a court of equal rank and jurisdiction and was a final decree, so far as that court was concerned, establishing the validity of the plaintiff's patents. *Empire State Nail Co.* v. *American Solid Leather Button Co.*, 21 C. C. A. 152; *Last Chance Mining Co.* v. *Tyler Mining Co.*, 157 U. S. 683.

In 3 Robinson on Patents, p. 588, § 1184, the rule in case of conflicting judgments is stated, as follows:

"When conflicting judgments have been rendered, the court must follow those which, in view of all the tests of authority, appear to have the higher value, and if the question is still doubtful, and no other evidence is offered, it must decide in favor of the patent. For, though the patent unsupported by a judgment is not sufficient proof of its own validity for the purposes of an injunction, yet when sustained by judgments, it outweighs all other judgments of an equal value."

See *United States Stamping Co.* v. *King*, 7 Fed. 860, 868.

Undoubtedly, the effect of the decree of the United States circuit court for the western district of Wisconsin was final within the territory over which its jurisdiction extended, and, in the absence of the prior decree of the United States circuit court for the eastern district of Michigan, it would have been of high persuasive and, perhaps, controlling force throughout the land. But the former court could not invalidate the decree of the latter court, save in its own territory, and notwithstanding its decree, the plaintiff's patents remained valid within the territory, subject to the jurisdiction of the Federal court in Michigan, and unconcluded, save only in the territory of the Wisconsin court, until the questions at issue should be settled by the decision of the Supreme Court of the United States. It cannot be held, therefore, as a matter

of law, that there was no consideration at all to support
the agreements of the parties, and although the defendant
might have lawfully withdrawn from its contract after the
Wisconsin decree, having seen fit, with full knowledge of
all the facts, to accept such consideration as remained as
the basis for a contract, it is bound by its terms.    In the
cases cited by counsel for defendant and appellant, the
fact of conflicting decrees was not present, and the cases,
therefore, do not apply.

*Second.*  Defendant gave testimony that in September,
1903, it informed plaintiff that it would no longer recog-
nize his patent or the contract, and claims that as the 18
plows referred to in the seventh item of plaintiff's claim
were sold after that notification, plaintiff was not entitled
to recover for such plows, and the jury should have been
so instructed.    The judge submitted the question to the
jury, instructing them that if they found that defendant
did notify the plaintiff, as claimed, that he could not
recover for this item.    This we think was as favorable
a charge as the defendant was entitled to.    Defendant's
counsel say :

" It is true the plaintiff denied that this language was
used, but he testified to circumstances which themselves
conclusively show defendant's withdrawal from the con-
tract."

We do not so read the record.    While the plaintiff does
admit that there was a serious dispute as to the terms of
the contract, we do not think that it conclusively appears
from his testimony that defendant had withdrawn from
the contract prior to the sale of these plows.    It was in
September, 1903, that defendant claims to have notified
plaintiff of its abandonment of the contract, and in Octo-
ber following, he wrote defendant a letter proposing an
arbitration of their differences as to royalties.  Defendant
Egbert Smith testified as follows:

" You intended then [September 14th] to go on with the
contract ?

"*A.* There never would have been any dispute in the matter.

"*Q.* I say you intended to go on with the contract?

"*A.* Certainly, we would have gone on if this letter had not come up, when the man would not carry out his contract, why we simply set back—there was no use going on any further with it.   *   *   *

"*Q.* Now, Mr. Smith, why is it that you have continued to advertise this plow as the 'Brazel Patent Snow Plow?'

"*A.* Because simply the name.   That advertisement in that paper was put in under my direction in the Cheboygan Tribune, in which we advertised, since the commencement of this suit, sale of the 'Brazel Patent Snow Plow.'"

*Third.* The defendant's fourth request to charge was as follows:

"You are instructed that the claim for $340 for plows sold outside of Michigan and Wisconsin, previous to December 14, 1894, being for matters arising more than six years previous to the commencement of this suit, is conclusively presumed to have been settled by the parties, and must not be considered by you in your verdict."

There is evidence in the record from which the jury would be warranted in finding that these charges were part of the items of an open running account upon which payments had been made within the period of six years prior to the commencement of suit, and the trial judge did not err in refusing this request.

The judgment is affirmed.

MOORE, C. J., and McALVAY, GRANT, and OSTRANDER, JJ., concurred.