### STEARNS v. LAWRENCE.

#### (Circuit Court of Appeals, Sixth Circuit. December 7, 1897.)

#### No. 523.

1. RES JUDICATA—FINDING OF FACT—CONCLUSIVENESS BETWEEN CO-DEFENDANTS.

A finding made in an action against a bank and its president that the president purchased certain notes for the bank with knowledge of a condition on which they were given is conclusive of such fact in a suit brought by a receiver subsequently appointed for the bank to charge the president with losses resulting from his negligent management.

2. SAME—EVIDENCE AS TO QUESTIONS ADJUDICATED—OPINION OF COURT.

Under the provision of the constitution of Michigan (article 6, § 10) requiring the decisions of the supreme court to be in writing, signed by the judges, and filed in the clerk's office, the opinion of that court, so filed in a case, is competent evidence of the questions adjudicated therein, in a subsequent action wherein the decision is sought to be used as an estoppel.

3. BANKS—LIABILITY OF OFFICER FOR MISMANAGEMENT—NEGLIGENCE.

The purchase of a note by the president and managing officer of a bank, for which he paid from its funds over $20,000, with knowledge that it was burdened with a guaranty made by the payee, which might defeat its collection, is such negligence as renders him liable to account to the bank or its creditors for any loss which resulted.

4. SAME—MEASURE OF RECOVERY.

Where the president of a bank negligently purchased a note, subject to a condition which defeated its collection, the bank is entitled to recover from him, as a part of the loss resulting, the expense of an unsuccessful defense made by him for the bank to an action brought by the maker of the note to enforce the condition.

Appeal from the Circuit Court of the United States for the Western District of Michigan.

Bill by John S. Lawrence, receiver of the Northern National Bank of Big Rapids, against George F. Stearns. From a decree for complainant, defendant appeals.

The defendant in error, as receiver of the Northern National Bank, of Big Rapids, Mich., brought this suit by bill in the court below to recover from the appellant damages for alleged breach of trust and negligence on his part while the active managing officer and president of that bank. The original capital stock of the bank was fixed at the sum of $150,000, but was subsequently reduced, under the direction of the comptroller, to $100,000. The bank having failed and closed its doors to business, the appellee was, on the 5th of August,

1893, appointed receiver of the bank by the comptroller of the currency, and entered upon the discharge of his duties as such receiver. The case as stated in the bill is as follows:

The appellant was president of the bank from its organization to about the 3d of August, 1891, and La Fora S. Baker, his nephew, was cashier from the organization of the bank to January, 1887. After Baker ceased to be cashier, the entire control and management of the bank was in the hands of the president, exercising thereafter practically the powers previously exercised by both officers. On the 22d of January, 1888, the bank held paper made by Baker, and indorsed by the Baker Lumber Company, to the amount of $15,000, and paper to the same amount made by the Baker Lumber Company, and indorsed by Baker. It was charged that the Baker Lumber Company was organized for the purpose of carrying on Baker's business, and to be used merely as a cover under which to obtain loans from the bank in excess of the amount permitted by law. Baker owned all the stock in the Baker Lumber Company, except a nominal amount, say one or two shares. It is charged that Stearns knew all of these facts, and that the corporation had been organized merely for the purpose of obtaining a loan in excess of the amount allowed by law, and that, with knowledge of such facts, he made the loan above stated, making in the aggregate $30,000. On the 22d of March, 1886, Baker sold to Anderson and Griffin certain pine lands for the sum of $50,000,—$5,000 in cash paid down, and the note of Anderson & Griffin taken for the remainder, $45,000, payable at two years, with interest at 7 per cent. This note was secured by a mortgage upon the property sold, and Baker at the same time gave to Anderson & Griffin a written guaranty that the lands, together with some other logs mentioned, would produce 13,000,000 feet of pine lumber, and agreeing to refund, at the rate of $3.50 per M., for any number of feet short of that amount. The bill further charged that the defendant, Stearns, had full knowledge of all of the particulars of this entire transaction, including the guaranty against shortage or deficiency. On the 9th of February, 1887, Baker transferred the note and mortgage to Palmer & Brown, as security for a loan of $20,000, which they had made to him, upon his note indorsed by Stearns. Anderson & Griffin made payments upon the note and mortgage to Palmer & Brown, so that January 22, 1888, there remained a balance due to Palmer & Brown of $4,508.56, leaving still due at that time, on the Anderson & Griffin note, a balance of $23,089.12. On the 3d of August, 1887, Stearns, acting for the bank, pursuant to an understanding with Baker, bought the Anderson & Griffin note and mortgage from Palmer & Brown, the transaction being closed the 22d of January, 1888, on which date Stearns, acting for the bank, paid the balance due Palmer & Brown of $4,508.56, this being the balance on the note of Baker, indorsed by Stearns. Stearns took the assignment of the note and mortgage to himself, and at once transferred the same to the bank in payment of the note of the Baker Lumber Company, indorsed by Baker, of $7,500, and two notes of $5,000 each, made by Baker, indorsed by the Baker Lumber Company, these being parts of the indebtedness of the lumber company and Baker to the bank, previously referred to. The notes were canceled and delivered up, and the Baker Lumber Company given credit upon the books of the bank for the sum of $1,080.56, this being the balance of the whole sum due upon the Anderson & Griffin note. The $1,080.56 thus placed to the credit of the Baker Lumber Company was afterwards checked out. It was further charged that this purchase for the bank of the Anderson & Griffin note and mortgage was without the knowledge of the directors or other officers of the bank, and that Stearns conducted the same personally, with full knowledge of the guaranty made by Baker against any shortage in the pine lumber. The quantity of pine on the lands turned out to be below the number of feet guarantied by Baker, and bill was subsequently filed in the state court by Anderson & Griffin against the bank, Stearns, and Baker, for the purpose of obtaining an abatement or credit for the deficiency on their note then held by the bank, and charging knowledge on the part of the bank of the rights of Anderson & Griffin under the contract. Baker made no defense, but Stearns, who was charged with having full knowledge of the guaranty when he purchased the note and mortgage for the bank, conducted the defense for the bank, and also answered for himself. In both answers it was denied that Stearns or the bank had knowledge of the Baker guaranty at the time Stearns purchased the note and mortgage and paid Pal-

mer & Brown. On final hearing, the court found that the bank and Stearns did in fact have knowledge of the guaranty, and decree went in favor of the complainant. The bank and Stearns both appealed to the supreme court, and the decree below, with a modification not affecting the present discussion, was affirmed. 57 N. W. 808.

It was decreed that, upon the payment by Anderson & Griffin to the bank of the amount paid by it to Palmer & Brown, Anderson & Griffin were entitled to have the note canceled and the mortgage discharged, it being found that there was a deficiency under the Baker guaranty which entitled Anderson & Griffin to a credit of $19,250,—a sum larger than the amount sufficient to discharge the balance due on the note at the time of its purchase by Stearns for the bank, after deducting the sum paid to Palmer & Brown, as to which sum it was held that the bank was an innocent holder. In this way the entire sum of the balance on the Anderson & Griffin note was discharged, and this sum, together with the credit checked out as before stated, was lost to the bank.

In his answer in this case, Stearns practically admits all the allegations of the bill except the charge that at the time he took the Anderson & Griffin note, and surrendered the paper of Baker and the Baker Lumber Company, he had any knowledge of Baker's guaranty. This is the only material thing denied in the answer, Stearns further setting up the statute of limitations in bar of the suit. The case is thus stated with reference to the substance and effect of the evidence, and such conclusions on the facts as the evidence taken as a whole fully warrants. It is not regarded as necessary or serviceable to refer to the proof in detail. The case was disposed of by the circuit court in a written opinion, with a full discussion of the facts and citation of authorities. The opinion is now published in Lawrence v. Stearns, 79 Fed. 878. Decree was rendered against appellant for $28,958.36, the damages sustained by the bank in consequence of the purchase of the Anderson & Griffin note, from which decree Stearns appealed, and has assigned error.

Albert Crane, Mark Norris, and Frederick W. Stevens, for appellant.

Niram A. Fletcher and George P. Wanty, for appellee.

Before TAFT and LURTON, Circuit Judges, and CLARK, District Judge.

CLARK, District Judge, after stating the case, delivered the opinion of the court.

The discussion of the case at bar in this court has not taken so wide a range as it apparently did in the court below. In the brief and argument in this court, counsel for appellant have urged two principal objections as grounds for reversal: (1) It is insisted that the proof does not sustain the charge that appellant, Stearns, at the time the Anderson & Griffin note was taken, and other paper of the bank surrendered, had knowledge of the existence of the Baker guaranty, on account of which the balance of this note was subsequently lost to the bank; and (2) the statute of limitation is relied on. This second defense was briefly disposed of by the court below by stating that all knowledge of the real facts of this transaction was concealed by Stearns from the bank until a time clearly short of the time prescribed by the statute of limitation, which has been suggested as applicable to the case.

The precise language in which the appellant undertakes to avail himself of the statute of limitation, as stated in the answer, is this:

"And this defendant avers that if said transaction was a violation of sections 5137 and 5200 of the Revised Statutes of the United States, which this defendant does not admit, but expressly denies, then that all right of action for such violation, if any exists, has been and is barred by the statute of limitations."

In regard to this point, counsel in the brief say:

"This suit is for the statutory penalty, and therefore is barred by the United States statute of limitations. Rev. St. § 1047. No suit * * * for any penalty or forfeiture, pecuniary or otherwise, accruing under the laws of the United States, shall be maintained, unless the same is commenced within five years from the time when the penalty or forfeiture accrued."

It is obvious without further statement that the supposed application of the statute of limitation to this case grows out of a total misconception of the character of the suit and the ground on which it proceeds. This suit is in no sense a suit for a penalty or forfeiture for the violation of any of the acts of congress in relation to banking associations, but is a suit to recover damages for the injury to the bank and its creditors from the negligence and bad faith of its managing officer, occupying a trust relation to the stockholders and to the assets in his hands for management belonging to the bank. We dismiss this point, therefore, with the simple announcement that the statute of limitation relied on has no place whatever in, or application to, the facts of this case. It is true that in the bill there is an allegation that the Baker Lumber Company was formed fraudulently for the purpose of enabling Baker to obtain a loan at the bank in excess of the limit prescribed by statute, but the suit was not predicated on this fact, and such fact was alleged merely as a circumstance throwing light on the transaction actually involved. As was properly observed by the court below: "This is not the gravamen of the charge, but it casts some light upon his subsequent proceedings."

In regard to the other defense, it will more narrowly draw the exact limits of the question to state that the bill alleges that the transaction resulting in the purchase of the Anderson & Griffin note was conducted by Stearns personally without the knowledge of any other director or officer of the bank. The testimony clearly shows this is so, and Stearns admits that he conducted the transaction throughout. There is not a suggestion in the pleadings or proof that any other officer of the bank had anything whatever to do with it or any notice or knowledge of it.

A part of the evidence on which the case was heard in the court below consisted of portions of the printed record in the case of Anderson & Griffin against the Northern National Bank, of Big Rapids, Mich., and Stearns, in the state court, which resulted in a decree canceling the Anderson & Griffin note, including the bill and answer of the bank and Stearns, the decree of the state circuit court, and the decree of the state supreme court, affirming the decree of the circuit court. Both of these decrees were prepared, and stated the result in general terms, without distinctly showing the specific facts found by the courts, and on which the judgments rested. The decree of the state circuit court adjudged that the bank and Stearns both had full and complete notice and knowledge of the written agreement and guaranty of Baker, and the right of the complainants to a rebate from the principal sum named in the note and mortgage on account of the shortage in the pine lumber, and that, having such knowledge, they were not holders in good faith. In the decree of the supreme court the same facts were found, with the further find-

ing that the defendants below, the bank and Stearns, had notice of the fact that the deficiency existed at the time the bank acquired the note and mortgage. The complainant introduced no parol testimony to show the precise facts found, and on which the judgments of those courts were actually pronounced; and the argument now is that the complainant has failed to make out a case, because it is consistent with these decrees to say that the bank obtained knowledge otherwise than through Stearns and through Stearns only. In other words, the decrees do not distinctly show that they were based on the finding that the bank was affected with knowledge, and its right defeated through Stearns and his knowledge only. In support of this position, the insistence is that this court is limited to the pleadings and the final decrees pronounced, which constitute part of the record, and that the court may not look to the opinion of the supreme court of Michigan for the purpose of determining the facts passed upon in the case. It is conceded, or at least not controverted, that, if the court may look to the opinion of the supreme court of Michigan, it discloses distinctly that the decree of that court was based upon the proposition that the bank had knowledge of the Baker guaranty by reason of the knowledge of its president and managing officer, Stearns, and Stearns only. The opinion clearly shows that this fact was distinctly passed upon, and if this question of fact was considered and settled in that case, the decree is, as to such fact. conclusive, although Stearns and the bank were both defendants. Wilson's Ex'r v. Deen, 121 U. S. 525, 7 Sup. Ct. 1004; Louis v. Brown Tp., 109 U. S. 163, 3 Sup. Ct. 92; Corcoran v. Canal Co., 94 U. S. 741; Southern Pac. R. Co. v. U. S., 168 U. S. 18, 18 Sup. Ct. 18. Stearns having been notified by service of process, and being directly interested in the subject-matter of that litigation, and having actually controlled the proceedings for the defense, the case falls within the doctrine of Robbins v. Chicago City, 4 Wall. 657; Chicago City v. Robbins, 2 Black, 418; Railway Co. v. Twiss, 35 Neb. 271, 272, 53 N. W. 76; Parr v. State, 71 Md. 236, 17 Atl. 1020; Drennan v. Bunn, 124 Ill. 176, 16 N. E. 100; Western & A. R. R. v. City of Atlanta, 74 Ga. 777; Davis v. Smith, 79 Me. 357, 10 Atl. 55, and cases cited. We are not to be understood as extending the rule beyond the principle of the Robbins Case. From a comparison of the Robbins Case and its facts with Minnesota Co. v. Chamberlain, 3 Wall. 704, relied on by appellant, it will clearly appear that the former case controls the one at bar, and that the latter case and others cited are not applicable.

It is not necessary or practically useful here to consider the distinction between a former adjudication of the same fact when specially pleaded as an estoppel and when admitted in evidence, the conclusive effect being the same. The question is, then, presented whether the written opinion of that court filed in the case constitutes a part of the record, or whether, regardless of the question whether it is technically a part of the record, the opinion may be examined for the purpose of determining the points adjudged, in order to give effect to the judgment of the court as an estoppel on the parties, so far as the same issue now involved was passed upon

in that case. In regard to this question, we do not think there is any very serious difficulty. The constitution of the state of Michigan (section 10, art. 6) declares that "the decisions of the supreme court shall be in writing, signed by the judges concurring therein. Any judge dissenting therefrom shall give the reasons of such dissent in writing, under his signature. All such opinions shall be filed in the office of the clerk of the supreme court." We remark that if the opinion thus filed, as required by the constitution of the state, may not be examined for the purpose of determining the real points passed upon in the case, so as to give full effect to the judgment as res adjudicata, it is difficult to understand the full purpose or motive in making the constitutional requirement that the opinion shall be filed in the cause, and preserved. The circuit court concluded that there could be no higher or better evidence of what was decided than the written opinion itself, upon which the formal decree was based, and in this view we concur.

In support of the right and duty of the court to examine that opinion for the purpose of ascertaining the point actually decided, cases will be found referred to by the circuit judge. In the examination of this question, the distinction between the different cases must always be closely observed, growing out of the purpose for which it was sought to treat the opinion as part of the record, and depending, further, upon whether the opinion offered is one of a court of last resort, filed as required by law. For illustration, the question may arise as to what constitutes a part of the record on writ of error to a judgment at law or on appeal from a decree in chancery. The question may again be presented in a case where the judgment is relied on as an estoppel, as in the case at bar, or on writ of error from the supreme court of the United States to the court of highest authority in a state, in which that court must examine the record for the purpose of determining whether or not such question was presented and decided as authorizes that court to review the judgment of the court of highest authority in the state. Whether or not attention to these different phases of the question would make it possible to reconcile the cases, and explain the apparent conflict of opinion upon the admissibility of the written opinion of a court as evidence to identify the question decided, we will not now stop to inquire.

In Corcoran v. Canal Co., 94 U. S. 741, the opinion of the court of appeals of Maryland was made an exhibit for the purpose of identifying the point decided in a former suit, and to give effect to the judgment in that suit as an estoppel. It was held that the parties were bound by the decree in that case, and the opinion of the court of appeals of Maryland was examined for the purpose of determining the issue passed upon. The court, having referred to the opinion, said:

"The opinion of the court of appeals of Maryland, found in the record as an exhibit, and reported in 32 Md. 501, while conceding the general rule that where the annual or semiannual interest on a bond is represented by a distinct coupon, capable of separation and removal from the main instrument, it bears interest from its maturity, if unpaid, holds that, under the special statute of Maryland authorizing the pledge by the canal company of its revenues for the

payment of these preferred bonds and interest, and waiving her own existing priority of claim on these revenues, simple interest only was meant, and that, as to the lien on those revenues and tolls, the interest on the coupons was not included in the lien. The opinion, undoubtedly, decided the very point in controversy here. It is said, however, that this is only an opinion, and that, unless a judgment or decree is produced, there can be no estoppel, and the principle asserted is undoubtedly correct. But, in a stipulation signed by the parties to the present suit, it is agreed 'that a decree has been passed by the circuit court of Baltimore city making distribution of the net revenues of said canal company, and ordering their payments from time to time as the same accrue, in conformity with the said opinion.' The opinion of the court, then, by virtue of that decree, has become, by the well-settled principles of jurisprudence, the law of the case as to the parties who are bound by that decree."

So, too, in Last Chance Min. Co. v. Tyler Min. Co., 157 U. S. 690, 15 Sup. Ct. 736, the question was presented how far the court might look to the written opinion to explain what was in issue, and what was determined by the judgment or decree relied on as a bar or estoppel. Mr. Justice Brewer, speaking for the court, said:

"It is said that the statutes of Idaho do not provide for findings of fact in a case like this, and that, therefore, the recitals in such findings must be ignored. If it be true that the statutes of Idaho do not authorize findings of fact, it is none the less true that such findings are a declaration by the court of the matter it determines. Even if not conclusive as against all testimony, they are certainly very persuasive evidence of what the court did in fact decide. In Lumber Co. v. Buchtel, 101 U. S. 638, the judgment relied upon as an estoppel was based upon the finding of a referee, and it was said: 'This finding, having gone into the judgment, is conclusive as to the fact found in all subsequent controversies between the parties on the contract. Every defense requiring the negation of this fact is met and overthrown by that adjudication.' In Legrand v. Rixey's Adm'r, 83 Va. 862, 877, 3 S. E. 864, it appeared that the pleadings and judgment left a doubt as to the precise matter decided. Reference to an opinion of the trial court, for the purpose of making certain that which otherwise was uncertain was approved. We quote from the supreme court of appeals: 'In the case at bar, the trial judge filed with the papers in the cause his reasons for his decision, which the decree itself shows was done for the express purpose of explaining his decision. This being the case, the opinion of the trial judge thus referred to in the decree becomes a part of the record, and may be looked to, and is even more reliable to explain in doubtful cases what was in issue and what was determined than mere extrinsic evidence to the same end. We do not mean that the mere opinion of the trial judge, which may happen to be in writing, and copied into the record, constitutes a part thereof; but we do say that where the decree (as in this case) refers to the opinion of the trial judge in terms that make it clear that the object was to refer to it to explain what was determined, and the reasons therefor, then such opinion becomes legitimately a part of the record, and must be looked to, to explain what was in issue, and what was determined by the judgment or decree in question. See Burton v. Mill, 78 Va. 468, at page 470.' "

For the same purpose, the opinions of the courts of highest authority have been examined in many other cases, as the decisions of that court show, but without any question being expressly made on the right or duty of the court to do so. It must certainly be regarded as an established practice in that court to refer to such opinions as evidence of the issue, and the points determined, in the case of a judgment or decree stating the result of the litigation in general terms only.

In Miles v. Strong, 68 Conn. 273, 36 Atl. 55, the supreme court of Connecticut, in disposing of the same question, said:

"The court permitted the plaintiffs, against the objection of the defendants, to read to it from the opinion of this court, referred to in the finding 'as bear-

ing upon the issues in the case.' One of the issues was whether the judgment in that case was a bar to this suit, and that depended on the further fact whether the judgment in question had settled the matters in litigation in the present suit; and, to ascertain this, the court below clearly might have read the opinion for itself, and it was no error to permit the plaintiffs to read it in the manner and for the purpose stated."

In Strong v. Grant, 2 Mackey, 218, this precise question was presented to the supreme court of Maryland for decision, the decree in a former suit being relied on as res judicata. Mr. Justice Hackner, speaking for the court, said:

"It is necessary, before proceeding to apply the tests laid down by this rule to the matter before us, to consider a preliminary objection insisted on by the appellant, that we are confined to the written record in the proceeding pleaded in bar, and have no power to examine the opinion of the supreme court, or resort to any other means of ascertaining what was the matter really in controversy in the equity suit, and actually settled by the decree relied on. In examining this question in the case of Cromwell v. County of Sac, 94 U. S. 353, the supreme court says: 'But, where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action.' On page 354, the judge, speaking of the decision in Miles v. Caldwell, 2 Wall. 35, says: 'The court held, after full consideration, where the form of the issue was so vague as not to show the questions of fact submitted to the jury, it was competent to prove by parol testimony what question or questions of fact were thus submitted and necessarily passed upon by them,' etc. In the case before it, the court was considering the effect and scope of its previous decisions in a case which was relied upon as res judicata in the cause thus pending, and in this connection it says, on page 359: 'Reading the record of the lower court [in the first case] by the opinion and judgment of this court, it must be considered that the matters adjudged in that case were these,' etc. So, in Steam-Packet Co. v. Sickles, 24 How. 344, the court declared that 'extrinsic evidence would be admitted to prove that the particular question was material, and was in fact contested, and that it was referred to the decision of the jury.' See, also, Campbell v. Rankin, 99 U. S. 263; 1 Greenl. Ev. § 532. In the light of these authorities, we are authorized and required to examine the opinion of the supreme court reported in the case of Grant v. Strong, 18 Wall. 624, with a view of ascertaining what that court really intended to settle by its decision reversing the decree below. And from that examination it appears to be too plain for controversy that the only question designed to be passed upon in that judgment was whether Strong was entitled to a mechanic's lien upon Grant's real estate described in the notice filed in the clerk's office."

As the court points out further on in the same opinion, the supreme court of the United States, in Phelps v. Harris, 101 U. S. 370, followed out its usual practice in examining and citing the opinion of the supreme court of Mississippi for the purpose of showing the scope and extent of the decree in that case, and the point really intended to be settled by that decision. See, also, New Orleans, M. & C. R. Co. v. City of New Orleans, 14 Fed. 373; 1 Freem. Judgm. § 273; 2 Black, Judgm. § 630; Satterlee v. Matthewson, 2 Pet. 410.

We hold, therefore, that it was competent for the court to examine, and its duty to examine, the opinion of the supreme court of Michigan for the purpose of determining the question of fact really settled and

intended to be settled by the decision of that court. It is needless to state, what clearly appears from what has been said, that we are dealing with the case where a former decree is relied on as res judicata, accompanied with the opinion filed pursuant to the requirements of law disclosing the issue settled by the decree. It may be remarked, further, that the opinion can be examined for the purpose only of construing a general decree and giving it just scope and effect, and not for the purpose of changing or modifying the decree.

The fact, then, being established that the appellant, Stearns, took the transfer of the Anderson & Griffin paper with full knowledge of the Baker guaranty, appellant's counsel further insist that this does not establish such negligence as renders the appellant liable for the loss which resulted to the bank. The contention is that it would be necessary to further show that, at the time the paper was transferred to the bank, the appellant knew there was a shortage which would defeat the collection of the debt in whole or in part under the Baker guaranty. The decree of the supreme court of Michigan expressly finds that a deficiency existed at the time that the bank and Stearns acquired the note and mortgage, and that they had notice of the same, and, as that court further settled the proposition that knowledge on the part of the bank was acquired through Stearns, it is difficult to see on what ground this part of the argument can be rested. The fact of knowledge of the deficiency was not only decided, but this, in our opinion, is not necessary to sustain the decree of the circuit court; for when the appellant, as the managing officer of the bank, took the Anderson & Griffin note with knowledge that it was burdened with the guaranty which might destroy its value and cause loss to the bank, it was such negligence as clearly rendered him liable to account for any loss which resulted. In his position of managing officer, he was required, in relation to the stockholders as well as the creditors of the corporation, to exercise good faith and reasonable care and judgment. We are at a loss to see on what reasonable ground it could be maintained that there was either good faith or good judgment in purchasing with the assets of the bank paper representing so large a sum, affected with an infirmity liable, if not certain, to destroy its value. As trustee, Stearns was under a duty of fidelity and prudence such as a careful man would exercise in his own affairs of like magnitude and importance. He is presumed to contemplate and to intend the natural consequences of his acts. Certainly, in the exercise of reasonable caution and prudence, it must have been foreseen that a loss on the Anderson & Griffin note was not only liable, but likely, to result.

In Agnew v. U. S., 165 U. S. 53, 17 Sup. Ct. 235, the court below had given an instruction in the following language:

"The law presumes that every man intends the legitimate consequence of his own acts. Wrongful acts knowingly or intentionally committed can neither be justified nor excused on the ground of innocent intent. The color of the act determines the complexion of the intent. The intent to injure or defraud is presumed when the unlawful act, which results in loss or injury, is proved to have been knowingly committed. It is a well-settled rule, which the law applies in both criminal and civil cases, that the intent is presumed and inferred from the result of the action. If, therefore, the funds, moneys, or credits of the First National Bank of Ocala are shown to have been either embezzled or

willfully misapplied by the accused, and converted to his own use, whereby, as a necessary, natural, or legitimate consequence, the association's capital was reduced or placed beyond the control of the directors, or its ability to meet its engagements or obligations or to continue its business was lessened or destroyed, the intent to injure or defraud the bank may be presumed."

This instruction was declared by the supreme court to be "unexceptionable as matter of law."

See, also, Trustees v. Bosseiux, 3 Fed. 817.

In the amount of the recovery against Stearns was included the expense incurred by the bank, in the defense of the suit brought by Anderson & Griffin against the bank to enforce the Baker guaranty; and it is said there is error in this respect, because no demand was made on appellant to defend that suit. Any formal demand would have been an idle ceremony, as process in the case was evidently served on Stearns; and it appears that he actively conducted the defense.for the bank, as well as himself. It is certain that a recovery, which did not include this item of expense, would come short of doing full justice to the bank, its shareholders and creditors. The expense incurred in the defense of that suit was a natural, legitimate consequence of the wrongful act of Stearns, knowingly and deliberately committed in violation of his trust, and was a result which no prudent man could fail to foresee and contemplate as natural and probable. We think the sum thus expended constitutes properly an item in the amount of damage, for which decree was rendered against the appellant.

Some other minor points are suggested rather than argued in the brief, although counsel for appellant took occasion to say expressly that no objection was waived. These suggested points are chiefly in aid of the principal defense relied on, rather than as constituting sufficient separate defenses. We have examined these in relation to the facts, and do not think they are sufficiently serious to require separate discussion. We are fully satisfied with the result of this case, and the decree of the circuit court is accordingly affirmed.

NOTE. Since this case was decided, the opinion of the supreme court of the United States in Thompson v. Railway Co., 18 Sup. Ct. 121, has been announced, which seems to sustain the holding in this case that the court is authorized to examine the opinion of the supreme court of Michigan for the purpose of ascertaining the grounds of the judgment.