### IMPERIAL MACHINE & FOUNDRY CORPORATION v. AMERICAN MACHINERY CO. et al.

(District Court, S. D. New York.   May 2, 1921.)

1. **Patents ⊜═328—809,582, for vegetable peeling machine, claims 1, 2, 3, and 4, held infringed.**

   The Robinson patent, No. 809,582, for a vegetable peeling machine, *held* for a pioneer invention, and the claims entitled to a broad construction. Claims 1, 2, 3, and 4 *held* infringed by a machine having a bowl-shaped disc with raised portions.

2. **Patents ⊜═157(1)—"Flat" used in patent claims broadly construed.**

   The word "flat," as used in patent claims, *held* not to be construed as a limitation to a literally plane surface, where not required for any functional purpose and where a variance would not affect the operation of the machine.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Flat.]

3. **Judgment ⊜═527—When opinion may be read to ascertain issues determined.**

   Where a decree dismisses a bill in general terms, without setting forth the ground of such dismissal, the opinion of the court may be referred to in order to determine what issues were decided.

4. **Patents ⊜═327—Prior decree held not to render construction of patent claims res judicata.**

   The question of a limitation of patent claims *held* not res judicata because of an opinion expressed by the court as to such limitation in a prior suit between the parties, where the issues and the alleged infringing device were not the same as in a later suit, and where such opinion was not determinative of the suit.

5. **Patents ⊜═289—Patentee held not estopped from maintaining suit for infringement.**

   Defendant for ten years made and openly advertised and sold machines which infringed complainant's patent, but complainant delayed bringing suit for several years after it had knowledge of such facts, presumably because of a construction of its patent by one Circuit Court of Appeals under which defendant did not infringe. *Held*, that complainant, owning a pioneer patent, and which was the pioneer in the manufacture of practical machines in the art, was not estopped to maintain a suit to enjoin further infringement by defendant, but that it was not entitled to recover damages or profits for past infringement.

In Equity.   Suit by the Imperial Machine & Foundry Corporation against the American Machinery Company and Harvey Brett.   Decree for complainant.

A. Alexander Thomas, of New York City, for plaintiff.

William A. Redding, of New York City, for defendants.

MAYER, District Judge.   This suit for infringement of two patents is the culmination of many years of controversy between plaintiff or its predecessors and American Machinery Company (formerly American Fruit Machinery Company).

At the conclusion of the argument, after the trial, the court stated that it would hold that the claims of United States letters patent No. 942,932 were not infringed.   Patent No. 1,031,735 having been with-

---

drawn from the suit, there remain only for consideration claims 1, 2, 3, and 4 of United States letters patent to Henry Robinson, No. 809,582, issued January 9, 1906.

The principal defenses are noninfringement, res adjudicata, and equitable estoppel.

The validity of the patent and of the claims here in issue is not challenged.

The patent has been the subject-matter of much litigation. Many of the cases involving the patent are referred to in Imperial Machinery & Foundry Corporation v. G. S. Blakeslee & Co. (C. C. A.) 262 Fed. 419.

Of the various infringing devices considered in the cases referred to in Imperial Machinery & Foundry Corp. v. G. S. Blakeslee & Co., supra, the only one which dealt with the device alleged in this suit to infringe was Imperial Machine Company v. Whyte's, Inc., and two companion suits in which Judge Learned Hand rendered an opinion upon a motion for a preliminary injunction. His opinion is not reported; but he held claims 1, 2, 3, and 4 valid and infringed in the three suits just referred to.

There are two other cases, namely, Imperial Machinery Company v. Riley, in the United States District Court for the Southern District of New York, in which Judge Learned Hand granted, without opinion, a motion for a preliminary injunction, and Imperial Machinery Co. v. Beau-Site, in which a motion for preliminary injunction was granted by Judge Learned Hand, without opinion, on claim 1 and a final decree was entered holding claim 1 valid and infringed.

It will be noted that reference is made in 262 Fed. 420 to the opinion of Judge McPherson in Robinson Machine Company v. American Fruit Machinery Company, reported as a note in 212 Fed. 959. The decree, entered by Judge McPherson, was reversed, as will appear infra. The claims here under consideration are set forth in 262 Fed. at page 420, and to conserve brevity need not here be repeated.

[1] 1. *Infringement.*—In American Fruit Machinery Co. v. Robinson Machinery Co., 191 Fed. 723, 112 C. C. A. 313, the Circuit Court of Appeals for the Third Circuit reversed the decree entered by Judge McPherson and placed upon the claims there under consideration a different construction from that which had been accorded to them by Judge McPherson. Judge Learned Hand's opinion in the case of Whyte's, supra, indicates clearly a different view from that announced by the Circuit Court of Appeals for the Third District. It is true that Judge Hand rendered his opinion upon a motion for preliminary injunction, but nevertheless he construed the meaning of the claims as written.

In Imperial Machine & Foundry Corp. v. G. S. Blakeslee & Co., supra, it will be noted that the Circuit Court of Appeals for this circuit held the patent to be a pioneer, saying at page 420 of 262 Fed., "Indeed, we think it is a pioneer patent," and again, "It is in this it may be said to be a pioneer invention."

[2] Thus, in construing the scope of the claims it must be remembered that the Circuit Court of Appeals for this circuit has charac-

terized the patent as pioneer. This has also been the characterization in some of the opinions of the District Judges who have had occasion to construe the patent. The bowl-shaped disc which is here alleged to infringe was not the subject-matter of controversy in any of the courts prior to the Whyte's Case. In that case a disc similar to the alleged infringing device in this case was before the court. In American Fruit Machinery Company v. Robinson Machine Company, 191 Fed. 723, 112 C. C. A. 313, the Circuit Court of Appeals for the Third Circuit construed the word "flat" used in the phrase "horizontal flat striated portion." The "horizontal flat striated portion" is unquestionably an essential element in each of the claims. It is plain that Judge Lanning writing for the court in 191 Fed. 723, regarded "flat" as literally flat in the ordinary acceptation of the word. If this view of the Circuit Court of Appeals for the Third Circuit is accepted, then the bowl-shaped disc, here involved, does not infringe. In support of the same construction given to the word "flat" which was accorded by the court just referred to, plaintiff's expert, Mr. Dow, called attention to various definitions which sustain defendants' contention, if the word "flat" is to be literally construed. One of these definitions is sufficient for illustration, namely, "Having an even and horizontal surface, or nearly so, without marked prominences or depressions; level without inclination; plane." Webster's International Dictionary of the English Language, published by G. & C. Merriam & Co., Springfield, Mass.

In respect of prior patents defendants place particular emphasis on British patent No. 5,435 of April 19, 1896, granted to Friedrick Schulte for apparatus for skinning potatoes, and United States patent No. 686,576, dated November 12, 1901, granted to Justin Blache for potato peeling machine.

There were two Blache machines and both were imported by a Mr. Otto from Paris, France, to New York City in 1904 to peel potatoes. The small Blache machine was an exhibit before the Circuit Court of Appeals in the suit of American Fruit Machinery Co. v. Robinson Machine Co., 191 Fed., supra, and was operated before the court. Mr. Robinson testified that one of the two Blache machines was exhibited to him and operated in his presence in 1904. The Blache machines were not successfully exploited. A machine made under the Schulte patent was apparently never exploited, and it is plain would not be a practical success. Defendants, however, contend that the Schulte and Blache patents show that Robinson was not the first inventor of a rotating, abrading disc having raised portions striated and having lower portions also striated, and therefore that Robinson was not a pioneer in this art, and consequently that claims 1, 2, 3, and 4, in addition to the requirements of their phraseology, should be limited to and construed to mean a disc having the horizontal flat striated portion in combination with the raised portions, using the word "flat" in the strict sense above referred to.

It is clear that there is no difference in operation between the flat disc with raised portions and the bowl-shaped disc with raised portions. Prior to Robinson's patent, as the record shows, there had been a good many attempts to invent a practical commercial device for peeling

vegetables. It is quite clear from the record that the device made under Robinson's patent was the first to attain commercial success. Apparently, there was a genuine need for such an article, as will be readily understood when it is appreciated that hotels and restaurants cook and serve great quantities of vegetables which it is important, for purposes of speed and economy, to peel in mass.

Latterly, such machines have been in demand for Army and Navy purposes.

The courts in patent cases necessarily strive to attain a correct result between two opposing tendencies, one on the part of the owner of a patent to stretch it beyond its just limits, and the other on the part of the infringer to hold down the patent to a narrow interpretation and thus open the way for competition free of the patent monopoly. Thus it is that the prior art, the practical results, the need met by the invention, and like facts enable the courts, in an elastic way, to determine whether there shall be accorded to claims a broad or a narrow or limited scope.

In the case at bar, I am satisfied that the claims are entitled to a broad scope. Nothing in the patent law is better known than that a combination of old elements or the introduction of only a single new element in combination with old elements often exemplifies an invention of a high order. When the patentee has "produced a structure which inaugurates a new industry and at once becomes popular," his invention is entitled to a high place in the art concerned. Auto-Vacuum Freezer Co. v. William A. Sexton, 239 Fed. 898, 153 C. C. A. 26.

I am of opinion, therefore, that the claims here should receive the construction placed upon them by Judge Learned Hand in the Whyte's Case. I shall adopt the following language of his in respect of the question involved in the use of the word "flat" in the claims here under consideration:

"However, that decision (American Fruit Machinery Company v. Robinson Machine Co., 191 F. R. 723) seems to stand squarely in the path of a similar result in the case of Whyte's. The rule which in deference to the decision of another court requires me to adopt its view of a patent's scope does not, however, absolve me from the necessity of deciding according to my own conviction, which I am bound to do. Nast, Foes & Co. v. Stover Mfg. Co., 177 U. S. 485, 488. And, though with real deference, I cannot view the construction of the patent in the same way as the Circuit Court of Appeals for the Third Circuit. The disc in Whyte's machine was, I should say, certainly a horizontal disc. It was as certainly not literally a flat disk and as in the case of the striate, if the matter is to end with the literal language of the claims, it can only end against the plaintiff, but it does not end so. No one has anywhere suggested that the slight curve in section of the disc makes the least difference in result or that it was essential to the allowance of the patent viewed from the prior art. Obviously it could not make any difference either in function or result. * * * Moreover, even if the question of language be pressed, the word, 'flat,' should be construed only in contradiction with the 'raised portions' which are elements of the claims. It seems to me that the patentee's purpose when he used the word was to contrast the word 'horizontal' with the upright sides of the vessel, and the word, 'flat,' with the 'raised portions.' If so, the main part of the disc need be flat only in distinction with the 'raised portions,' as it is, and may be a shallow saucer."

Viewing the claims of the patent in this light, I hold that the bowl-shaped disc of the defendants infringes claims 1, 2, 3, and 4.

2. *Res Adjudicata.*—The particular question here presented has some elements of novelty. In the case in the Third Circuit, supra, the alleged infringing device was a spiral disc. The decree in that case forever settled the controversy in respect of the spiral device there alleged to have infringed, and defendant American Machinery Company may manufacture or/and sell the spiral device in any jurisdiction.

In the case at bar, however, there is a new device, i. e., the bowl-shaped disc, different from the spiral device. The tort alleged is a new tort and gives rise to a new cause of action.

[3] What then can be said to have been decided in the Third Circuit case? An examination of the record in the Third Circuit case discloses that the present alleged infringing device was not before the court. Whether, in all cases, the opinion of the court may be examined in order to determine what was decided is a debatable question, but where a decree dismisses a bill in general terms without setting forth the ground of such dismissal, it would seem that the opinion of the court may be resorted to in order to determine what issues were decided. Last Chance Mining Co. v. Tyler Mining Co., 157 U. S. 633, 15 Sup. Ct. 733, 39 L. Ed. 859; D'Arcy v. Staples & Hanford Co., 161 Fed. 733, 88 C. C. A. 606.

As said by Judge Severens in the D'Arcy Case, supra, 161 Fed. at page 737, 88 C. C. A. 606:

"In the present case one of the alleged infringing spring supports is identical with that held to infringe in the Lord Case. The pleadings and decree in the Lord Case were general, declaring simply that the defendant had infringed. There is nothing, therefore, in them which indicates with precision what kind of a spring support was held to infringe. But the Circuit Court filed an opinion, and this opinion was adopted as its own by the Circuit Court of Appeals on appeal to that court. 148 Fed. 16, 78 C. C. A. 167. And we think that we may, and should, refer to the opinion to definitely ascertain what questions were presented to the court and decided by the decree. Stearns v. Lawrence, 83 Fed. 738, 28 C. C. A. 66; Corcoran v. Canal Co., 94 U. S. 741, 24 L. Ed. 190; Last Chance Min. Co. v. Tyler Min. Co., 157 U. S. 690, 15 Sup. Ct. 733, 39 L. Ed. 859. From that we learn that a certain specific structure was held to infringe, and no other. That structure is identified as being one of the structures alleged to infringe in the present case. Upon these facts we think the court below rightly held that the defendant was precluded by the former decree from denying the validity of the patent, and was also precluded from denying that the use and sale of the particular spring support involved in the adjudication was an infringement of the patent in suit."

[4] In the case here at bar, both sides refer to the opinion of Judge Lanning in the Third Circuit case to support their contentions.

But if an opinion may be resorted to, in connection with the question of res adjudicata such resort is only to ascertain the facts. The essential fact in the Third Circuit case was that certain devices were held not to infringe claims 1, 2, and 3 of the patent here under consideration. The construction, placed by the court in the Third Circuit upon the claims, explained one of the reasons for the court's decisions. In other words, the court expressed its opinion as to the meaning of "flat," and for that reason, among others, concluded that the devices

did not infringe. The principal issues, however, in that lawsuit, were: (1) The validity of the patent; and (2) whether the claims in issue were infringed. But under the doctrine of Cromwell v. County of Sac, 94 U. S. 351, 24 L. Ed. 195, a second action upon a new cause of action is not barred unless the first action between the parties has disposed of the matters which are in issue in the second action. The opinion of the court in the Third Circuit constitutes merely a reason. It cannot be regarded as a fact or issue or question which was litigated and disposed of, because validity and infringement were the issues, questions, and facts.

As affecting res adjudicata, therefore, it seems to me that it cannot be said, as matter of law, that because the court in the Third Circuit was of a certain opinion as to the meaning of the word "flat," therefore that construction of the claims of the patent is res adjudicata against this plaintiff in a case where an entirely new device is alleged to infringe. In the latter instance, a plaintiff is entitled to have the question of infringement independently determined, so far as concerns res adjudicata, and the opinion of the court in prior cases between the same parties cannot constitute an estoppel. The estoppel is to be found in the decree, and if the decree is not clear as to what was decided then for enlightenment the record may be examined and, in some circumstances, the opinion. It is held, therefore, that the previous decree is not res adjudicata.

[5] 3. *Equitable Estoppel.*—The facts in this case are somewhat peculiar. According to the testimony of Mr. Matthews, vice president of the defendant company, it has been engaged in continuously making and selling throughout the United States potato peeling machines provided with the bowl-shaped disc, complained of in this suit, from July, 1911, down to the trial of this suit in January, 1921.

It made and sold 21 of such machines during the last six months of 1911 and the following mentioned quantities of such machines during each calendar year from 1911 to 1921, viz.: 1912, 180; 1913, 182; 1914, 190; 1915, 193; 1916, 300; 1917, 444; 1918, 563; 1919, 394; 1920, 354; total, 2,860.

During the period from December, 1911, down to 1921, it has sold more than 200 of such machines for use in restaurants, hotels, and other places in New York City, and these have been in constant practical use by the purchasers of them.

Prior to 1916 at least 27 hotels, restaurants, public institutions, and others in the city of New York purchased such machines from defendant company or its dealers and used such machines in this city for peeling potatoes; and at least 4 dealers located in this city purchased such machines from defendant company and had them on exhibition here and sold them to parties in this city.

Brett, the other defendant, has been a customer of American Machinery Company since some time in 1911 down to the trial of this suit in January, 1921, and during all that time has been purchasing from that company such machines f. o. b. Philadelphia, and has been selling such machines in the city of New York and other places within the vicinity of this city, and has been exhibiting these machines.

Defendant company, almost every year since 1911, has supplied such machines to various dealers, like Duparquet, Hout & Moneuse Company, L. Barth & Sons, and Bramhall-Deane Company, to be exhibited by them in public exhibitions, in both New York City and Philadelphia, and such exhibitions were usually held at conventions of hotel men and under the auspices of kitchen equipment sales agencies.

Defendant company, from some time in 1916, down to 1921, widely distributed throughout the United States printed folders and printed circulars containing illustrations and descriptions of these machines.

For the purpose of manufacturing such machines, it has employees and machinery. Parts for such machines are bought by the company from other parties and are used in the assembling of such machines, but a substantial amount of the work is done by this company in completing such machines. This company has two floors, one of which has a space of 13,500 square feet, more than two-thirds of which is used in the manufacture of such machines.

It has expended more than $20,000 for advertising, display notices, circulars, and the like, and for expense in carrying on the business of selling such machines.

Its business of manufacturing and selling potato peeling machines having the bowl-shaped disc complained of in this suit constitutes at least 40 per cent. of its entire business annually, and is larger than its business in any other product made and sold by it.

Defendant company discontinued making and selling the potato peeling machines having the spiral form of disc when the decision of Judge McPherson was rendered, June 3, 1911, holding claims 1, 2, and 3 of the Robinson patent, No. 809,582, to be valid and infringed by that company, and soon thereafter began making and selling potato peeling machines having the bowl-shaped discs complained of in this suit. It did not resume the manufacture and sale of the machines with the spiral form of discs after it had a lawful right to do so by reason of the decision rendered by the United States Circuit Court of Appeals for the Third Circuit, December 6, 1911, because it had adopted this bowl-shaped disc as its standard product, and had gone to the expense of making patterns for casting this form of disc in various sizes, and had put such machines on the market, having been advised by counsel that it had the right to do so, and, moreover, it was pleased with the operation of the bowl-shaped disc and considered it better than the spiral form of disc; and it has continued to equip its machines with this bowl-shaped form of disc exclusively, since the summer of 1911.

Mr. Robinson, who testified on behalf of plaintiff in this suit, is president and general manager of plaintiff corporation, and prior to the organization and incorporation of plaintiff corporation was president and general manager of the predecessors in title to plaintiff, i. e., of Imperial Machine Company and Robinson Machine Company. He, as president and general manager of these three corporations, had control of and managed the business of them while each of them was the owner of this Robinson patent, No. 809,582.

Robinson, while under cross-examination, testified that he knew of Horn & Hardart Baking Company having places of business in Philadelphia and New York City; that in 1913 that company gave him orders for his potato peeling machines and told him that it was then using potato peeling machines of American Machinery Company in its restaurant in New York City.

In answer to the question, "Did they tell you whether or not the machines had the bowl-shaped discs," Robinson testified, "They did not tell me anything outside of what I have stated, and I did not inquire."

In other words, he knew in 1913 that defendant company was selling potato peeling machines, but he did not even ask what kind of machines were being sold.

Robinson further testified upon cross-examination in substance that as early as 1916 he had a printed circular or folder of American Machinery Company like those marked defendants' Exhibits A and B; and that he got a number of printed circulars of American Machinery Company from time to time.

There is some confusion as to what discs were before Judge McPherson, but there is no reason to doubt that defendant began the manufacture and sale of discs like the infringing disc in 1911 and began to circularize the trade in 1915.

Robinson testified that the first time he saw a disc like plaintiff's Exhibit 4 (the infringing disc here concerned) was in Whyte's restaurant in 1918. During the period from 1913 (the Horn & Hardart incident) to 1918 (the Whyte incident), the situation was that the only decision of an appellate court was in favor of defendant company.

There can be no question that defendants' bowl-shaped disc under the construction of the Third Circuit case would have been held not to infringe.

The defendant company was therefore entirely justified in following advice of counsel, in manufacturing and selling their bowl-shaped disc. They did this openly and not in the secret way employed by fly by night infringers. The slightest inquiry by Robinson in 1913 would no doubt have informed him as to the nature and make-up of the infringing device. It may fairly be inferred, however, that he did not wish to venture to bring suit in the territory of the Third Circuit in view of the decision of the Circuit Court of Appeals for that circuit. Certainly, after he saw the circular or circulars in 1916, he could no longer remain quiescent. While, undoubtedly, he had financial obstacles, he nevertheless brought other suits before the suit against Whyte's and by the time he began the Whyte's suit he had obtained, as the record shows, some favorable decisions, which possibly raised hopes he had not theretofore entertained. Defendant company was his bitter adversary and was selling large numbers of machines under circumstances where any reasonable effort would have enabled plaintiff to ascertain the facts necessary to frame the usual bill in equity. When this suit was originally brought, Brett was the only defendant against whom jurisdiction would lie. Because of the conditions developed on the motion for temporary injunction, defendant company

was practically forced to come into this jurisdiction. If there had been no decision in the Third Circuit, the case would have been different. Defendant company then would have taken its chances and suffered the result of the hazard. When, however, the manufacture and sale is lawful in one jurisdiction, the test in another jurisdiction should be promptly undertaken where sales are open and notorious and easily susceptible of ascertainment.

There is, however, a difference between interposing an equitable estoppel, so as to leave the field free to the competitor, and the denial of an accounting.

Where an alleged infringer is led into starting a new industry or enterprise, estoppel has been applied; but it is a defense cautiously allowed. It cannot be said in this case that a new industry was started by defendant. Robinson was the pioneer in the practical and commercial side of the art. Under our system, there were eight other circuits where the patent and the claims might receive an interpretation different from that given by the Third Circuit case. That was one of the chances defendant company took when it concluded to submit itself to this jurisdiction. On all the facts in the case, it seems inequitable to deprive plaintiff of the benefit of patent during its short remaining life. On the other hand, plaintiff cannot, by its inaction on all the facts here disclosed, profit to the extent of obtaining damages or profits from defendants; for I am of opinion that as matter of law, on the facts in this case, both defendants are in the same position.

It seems to me, also, that notwithstanding the decision in the Whyte's Case, defendant should not be penalized, from the accounting standpoint, for continuing its sales until a decision was had after a trial; for the Whyte's Case ended after the decision on the preliminary injunction and there was no trial.

As the results in an effort to work out equity are in some respects not usual, they may be thus summarized:

(1) The patent is valid.

(2) Claims 1, 2, 3, and 4 are infringed.

(3) An injunction will issue restraining defendants from manufacturing, selling, etc., plaintiff's Exhibit 4, except that deliveries may be made by defendants on all binding orders or contracts made or received in good faith up to and including this 2d day of May, 1921, as evidenced by an appropriate affidavit to be filed in the office of the clerk of this court.

(4) There will be no accounting up to and including May 2, 1921, where orders have been received in good faith as supra.

Submit decree on notice.

NOTE.—1. The injunction will be suspended, if defendants so apply, on appropriate terms.

2. The matter of sales to the United States will be taken up on the settlement of the decree.

3. No costs.