# LAST CHANCE MINING COMPANY *v.* TYLER MINING COMPANY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 831. Argued March 6, 7, 1895. — Decided April 15, 1895.

When the course of a mineral vein is across a claim, instead of in the direction of its length, the side lines of the location of the claim become, in law, the end lines, and the end lines become the side lines.

When the jurisdiction of a controversy by a court is unquestioned, and the cause proceeds to final judgment, and no review is sought for, the judgment is conclusive upon the parties to the suit as to the matters decided, but not as to matters which might have been decided, but were not.

In an action, brought under the provisions of Rev. Stat. §§ 2324, 2325, by an adverse claimant to a part of a mineral claim as located, the plaintiff alleged a priority of location, and rested his right to recover upon it. The defendant answered, but subsequently and before judgment withdrew his answer, and amended his application for a patent so as to exclude the tract in controversy. At the trial the defendant did not appear, but the plaintiff introduced evidence, oral and documentary. The court made a finding of fact that the tract in controversy had already been located by the plaintiff as a part of his mining claim when the defendant located his claim upon it, and that, consequently, it was not subject to location by the defendant. Upon that finding it was adjudged that, by reason of the law and premises, the plaintiff was the owner of the disputed tract, that he was entitled to the possession of it, and that he recover possession of it from the defendant. *Held,*

(1) That it appeared by the record that the court had in that case passed upon and determined the question of priority of location,

and upon such determination had given judgment in favor of the plaintiff;

(2) That the defendant's withdrawal of his answer did not operate to take the complaint out of the case, or the allegations of fact contained in it, or to prevent a judicial determination of those facts;

(3) That the abandonment of his claim by the defendant did not take the jurisdiction for the settlement of the question out of the hands of the court, or restore it to the Land Department;

(4) That the judgment of the court was in all respects regular; was conclusive as to the particular ground in controversy; and was binding by way of estoppel as to every fact necessarily determined by it, including the question of priority of location.

Findings of fact in such cases, even when no statute provides for making them, are a declaration by the court of the matter which it determines, and are conclusive as to it in subsequent controversies between the parties.

A judgment by default is just as conclusive an adjudication between the parties of whatever is essential to support the judgment, as one rendered after answer and contest; and in such case facts are not open to further controversy if they are necessarily at variance with the judgment on the pleadings.

In view of the conclusions reached, it is not necessary to consider what extra-territorial rights (if any) exist when a vein enters at an end line, and passes out at a side line.

ON August 8, 1891, the Tyler Mining Company brought its action in the Circuit Court of the United States for the District of Idaho to recover of the Last Chance Mining Company and others the possession of a certain portion of a mineral vein, as well as the value of the ores theretofore taken from the vein by the defendants. After disclaimer by two and answer by the Last Chance Mining Company and other defendants, the case came on for trial. In this there was a verdict and judgment for the defendants. This judgment was reversed on error by the Court of Appeals of the Ninth Circuit, and a new trial ordered. 7 U. S. App. 463; 54 Fed. Rep. 284. At the February term, 1893, of the Circuit Court for the District of Idaho the new trial directed by the Court of Appeals was had, and resulted in a verdict and judgment for the plaintiff. On error to the Court of Appeals this judgment was, on April 2, 1894, affirmed, 61 Fed. Rep. 557, whereupon, on application of the defendants, the case was brought to this court by writ of *certiorari*.

The following diagram, taken substantially from the first opinion of the Court of Appeals, fully illustrates the situation of the respective claims:

*Direction of dip is to south.*

The controversy is between the owners of the Tyler claim and those of the Last Chance claim. As appears from the diagram the Tyler claim as originally located (1, 2, 3, 4) conflicts with the Last Chance claim (7, 8, 9, 10) in the triangular piece marked "A." On April 19, 1887, the owners of the Tyler claim made application for a patent for the entire claim as thus originally located. To this application the owners of the Last Chance claim filed, under the authority of sections 2324 and 2325, Revised Statutes, an adverse claim to the conflicting ground "A," and thereafter commenced the required action in the District Court of the First Judicial District of

Idaho Territory. In that action the owners of the Tyler claim appeared and filed answer, but when the case was called. for trial the answer was withdrawn and a judgment entered in favor of the plaintiffs. No reason for this withdrawal appears in the record of the proceedings of the District Court, but the testimony in this case shows that pending those proceedings the owners of the Tyler claim amended their application for purchase in the Land Department by excluding therefrom the territory marked on the diagram 3, 4, 5, 6, thus leaving their application only for territory outside the boundaries of the Last Chance claim.

At the first trial in the Circuit Court the record of this judgment in the District Court was admitted in evidence for the purpose of showing that the Last Chance claim had priority of location over the Tyler claim. On review in the Court of Appeals its admission was adjudged error, and by reason thereof the judgment of the Circuit Court was reversed. On the second trial in the latter court the record was again offered but was excluded, and this ruling was sustained by the Court of Appeals.

According to the original location of the Tyler claim the lode entered through an end line (1, 2), but passed out through a side line (2, 3), and did not touch the end line (3, 4). Under the amended location it passed through two parallel end lines (1, 2, and 5, 6). The amended application was accepted by the land office, and a final certificate for the tract with the reduced boundaries was issued to the owners of the claim. Within the vertical planes of the end lines (1, 2, and 5, 6) extended, the ore bodies in dispute are found, and the dip of the vein being in that direction it was held that the owners of the Tyler claim were entitled to follow the vein on its dip beyond the side line (2, 6), and took these ore bodies as a part of the vein thus followed.

*Mr. W. B. Heyburn* and *Mr. C. S. Voorhees* for plaintiffs in error.

*Mr. Arthur Brown* and *Mr. John R. McBride* for defendant in error.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

The course of this vein is across the Last Chance claim instead of in the direction of its length. Under those circumstances the side lines of that location become the end lines, and the end the side lines. *Mining Company* v. *Tarbet*, 98 U. S. 463; *Argentine Mining Company* v. *Terrible Mining Co.*, 122 U. S. 478; *King* v. *Amy &c. Mining Co.*, 152 U. S. 222.

On the assumption that the action of the owners of the Tyler claim, in excluding from their application a portion of their claim, was legal, obviously the priority of location becomes a pivotal question. For, while the disputed ore is on the dip of the vein within the extended vertical planes of the end lines of the Tyler claim, it is also within the legal end lines of the Last Chance claim, and on the dip of the vein as it passes through that claim. Naturally, therefore, the controversy in the Circuit Court was upon the priority of location. The judgment of the District Court in the adverse suit having been excluded from evidence, parol testimony was admitted for the purpose of determining this priority, and the question of fact arising on such parol testimony was settled by the jury in favor of the owners of the Tyler claim. Was the judgment of the District Court in the adverse suit properly excluded? The law in respect to estoppel by judgment is well settled, and the only difficulty lies in the application of the law to the facts. The particular matter in controversy in the adverse suit was the triangular piece of ground, which is not the matter of dispute in this action. The judgment in that case is therefore not conclusive in this as to matters which might have been decided, but only as to matters which were in fact decided. *Hopkins* v. *Lee*, 6 Wheat. 109; *Smith* v. *Kernochen*, 7 How. 198; *Pennington* v. *Gibson*, 16 How. 65; *Stockton* v. *Ford*, 18 How. 418; *Washington &c. Steam Packet Co.* v. *Sickles*, 24 How. 333; *S. C.* 5 Wall. 580; *Lessee of Parrish* v. *Ferris*, 2 Black, 606; *Cromwell* v. *County of Sac*, 94 U. S. 351; *Davis* v. *Brown*, 94 U. S. 423; *Russell* v.

*Place,* 94 U. S. 606; *Campbell* v. *Rankin,* 99 U. S. 261; *Lumber Co.* v. *Buchtel,* 101 U. S. 638; *Stout* v. *Lye,* 103 U. S. 66; *Nesbit* v. *Riverside Independent District.* 144 U. S. 610: *Johnson Company* v. *Wharton,* 152 U. S. 252.

The action in the District Court was brought in compliance with the express provisions of the act of Congress. The jurisdiction of the court is unquestioned, and the parties to the controversy are the same. The question then is, what was in fact decided in that action? Turning to the complaint we find that it states the boundaries of the Last Chance claim; alleges that on September 17, 1885, certain named parties duly located such claim, and that at the time of and prior to such location the ground described "was vacant and unoccupied and a part of the public domain of the United States, and the mineral lands thereof." It further describes the particular acts which were done in making the location; avers the conveyance of the title by the locators to the plaintiffs; their continued performance of the necessary work; the application on April 19, 1887, of the Tyler Mining Company for a patent for the Tyler claim; the conflict between the two claims in respect to the triangular piece of ground; the filing of an adverse claim by plaintiffs; that "said adverse claim was duly allowed by the register of said land office, and all proceedings on said application for patent on the part of the claimants therefor were by the register ordered to be stayed until the controversy as to the right of possession shall have been settled by a court of competent jurisdiction;" and that the action was "brought in support of the protest and adverse claim so filed by the plaintiffs to determine the right of possession of the tract of ground by metes and bounds last hereinbefore described." The prayer was that the plaintiffs "be adjudged to be owners of and entitled to the possession of the said tract of mining ground by metes and bounds last hereinbefore described as a part of the hereinbefore mentioned and described Last Chance mining claim," and for costs.

The scope of the answer filed by the owners of the Tyler claim is not disclosed. It only appears that having filed an answer they withdrew it. When the case came on for trial,

the defendants not appearing, the plaintiffs, as the record shows, introduced evidence, oral and documentary. The court made certain findings of fact, which findings corresponded generally with the allegations of the complaint. Among them was this, "that at the time the said Tyler mining claim was located that portion of the ground so in conflict as aforesaid had been located as a part of the Last Chance mining claim, and was not subject to location by the locators of the Tyler mining claim ;" and as a conclusion of law it ruled "that the plaintiff above named, the Last Chance Mining Company, is the owner of the ground and a portion of the mining claim described in the complaint herein as in conflict between the said Last Chance mining claim and the Tyler mining claim, by virtue of a valid location of the said Last Chance mining claim made by John Flaherty, J. L. Smith, M. Carlin, and John M. Burke on the 17th day of September, 1885 ; and that the plaintiff is entitled to the possession of the said ground so in conflict as aforesaid by virtue of such valid location."

Upon these findings and conclusion a judgment was entered, which recites : "Therefore, by reason of the law and premises aforesaid, it is ordered, adjudged, and decreed that the Last Chance Mining Company, the plaintiff above named, is the owner of, and, by virtue of a valid location of a mining claim called the Last Chance, made on the (17th) seventeenth day of September, A.D. 1885, by John Flaherty, J. L. Smith, M. Carlin, and John M. Burke, is entitled to the possession and the right of possession of all that piece or portion of said mining claim in the complaint herein described," (here follows a description of the triangular piece " A ") " containing an area of 1.474 acres of ground, and the plaintiff do have and recover the possession and right of possession of said premises from defendant, the Tyler Mining Company."

Thus it appears that the complaint alleges a priority of location, and upon that rests the right to recover. The existence of the Tyler location as a location is not challenged either expressly or by implication. Indeed, the complaint

proceeds upon the assumption of its validity. The findings are express as to priority, and contain no suggestion of any defect in the Tyler claim, or any fact in favor of plaintiff's right other than that of priority of location, while the conclusion of law and the judgment recite and adjudge a valid location of the Last Chance mining claim on September 17, 1885, and a right of possession by virtue thereof. Upon the record taken as a whole there can be no escape from the conclusion that the court determined the question of priority of location, and upon this rendered judgment for the plaintiffs. What is there to impeach this conclusion?

It is said that the statutes of Idaho do not provide for findings of fact in a case like this, and that therefore the recitals in such findings must be ignored. If it be true that the statutes of Idaho do not authorize findings of fact, it is none the less true that such findings are a declaration by the court of the matter it determines. Even if not conclusive as against all testimony, they are certainly very persuasive evidence of what the court did in fact decide. In *Lumber Company* v. *Buchtel, supra,* the judgment relied upon as an estoppel was based upon a finding of a referee, and it was said: "This finding having gone into the judgment is conclusive as to the fact found in all subsequent controversies between the parties on the contract. Every defence requiring the negation of this fact is met and overthrown by that adjudication." In *Legrand* v. *Rixey's Administrators,* 83 Virginia, 862, 877, it appeared that the pleadings and judgment left a doubt as to the precise matter decided. Reference to an opinion of the trial court, for the purpose of making certain that which otherwise was uncertain, was approved. We quote from the Supreme Court of Appeals:

"In the case at bar, the trial judge *filed with the papers in the cause* his reasons for his decision, which the decree itself shows was done for the express purpose of explaining his decision. This being the case, the opinion of the trial judge thus referred to in the decree becomes a part of the record, and may be looked to, and is even more reliable to explain, in doubtful cases, what was *in issue* and what was determined,

than mere extrinsic evidence to the same end. We do not mean that the mere opinion of the trial judge, which may happen to be in writing and copied into the record, constitutes a part thereof; but we do say that where the decree — as in this case — refers to the opinion of the trial judge in terms that make it clear that the object was to refer to it to explain what was determined, and the reasons therefor, then such opinion becomes legitimately a part of the record, and must be looked to to explain what was *in issue* and what was determined by the judgment or decree in question. See *Burton* v. *Mills*, 78 Virginia, 468, at p. 470."

But if we ignore the findings altogether and look simply at the judgment and the complaint, this will appear: The single ground stated in the complaint upon which superiority of right is claimed is priority of location. A judgment for the plaintiffs upon such a complaint is necessarily an adjudication in favor of that priority of location. There is no other fact upon which it can rest. It is doubtless true, as suggested, that other questions may be litigated in an adverse suit, but they can be litigated only when they are presented to the attention of the court by some appropriate pleading. The only pleading upon which the case passed to trial and judgment was the complaint, and in that, as we have seen, plaintiff's right to recover is rested upon the single fact of priority of location.

It is said that the defendants did not contest; that they withdrew their answer, and that there was only a judgment by default. But a judgment by default is just as conclusive an adjudication between the parties of whatever is essential to support the judgment as one rendered after answer and contest.

The essence of estoppel by judgment is that there has been a judicial determination of a fact, and the question always is, has there been such determination, and not upon what evidence or by what means was it reached. A failure to answer is taken as an admission of the truth of the facts stated in the complaint, and the court may properly base its determination on such admission. Suppose the defendant files a denial, and

on the trial the only evidence is the testimony of a witness to an admission made by the defendant out of court, and upon such testimony the judgment is rendered. Is it any the less a judicial determination because resting simply upon proof of the defendant's admission, and yet in principle what distinguishes that case from this? In each the judgment is resting upon an admission of the party against whom the judgment is rendered, and does it make any difference in what form that admission is presented to the judge? In 1 Freeman on Judgments, 4th ed., section 330, the author says, citing many authorities in support thereof: "Upon principle, we think that the denial of a fact subsequently judicially established ought not to impart to an adjudication any greater effect than if all the parties had expressly or impliedly admitted the fact to be beyond controversy when such adjudication was made; and this is the view taken by the greater portion of the American courts." Among the authorities cited is *Nashville &c. Railway* v. *United States*, 113 U. S. 261, in which a decree in equity by consent of parties was held to bar a subsequent suit on any claim included in the decree. Bigelow, in his work on Estoppel (p. 77), closes a discussion of the question with this observation: "The meaning simply is that judgment by default, like judgment on contest, is conclusive of what it actually professes to decide as determined from the pleadings; in other words, that facts are not open to further controversy if they are necessarily at variance with the judgment on the pleadings." *Brown* v. *Mayor*, 66 N. Y. 385; *Blair* v. *Bartlett*, 75 N. Y. 150; *Nemetty* v. *Naylor*, 100 N. Y. 562; *Orr* v. *Mercer County Ins. Co.*, 114 Penn. St. 387.

The withdrawal by defendants of their answer may have prevented any judicial determination as to the special facts set up therein in defence or avoidance of plaintiff's claim. *Finnegan* v. *Campbell*, 74 Iowa, 158. But such withdrawal was not operative to take out of the case the complaint, or the allegations of fact therein contained, or to prevent a judicial determination of those facts.

But further, it is contended that the action of the owners of the Tyler claim in amending their application, coupled with

the withdrawal of their answer, took them entirely out of the case in the District Court. It is said that they had abandoned all claim to the property theretofore in controversy : that they were really no longer parties to the action, and that it remained simply a case pending between the owners of the Last Chance and the United States. Such seems to have been the view taken by the Court of Appeals when it held that the judgment was improperly admitted in evidence. We are unable to concur in this view. It may well be doubted whether the amendment filed in the land office had any force or effect during the pendency of the action in the District Court. Section 2326 provides that after the filing of the adverse claim, " all proceedings, except the publication of notice and making and filing of the affidavit thereof, shall be stayed until the controversy shall have been settled or decided by a court of competent jurisdiction, or the adverse claim waived." As said by this court in *Richmond Mining Company* v. *Rose*, 114 U. S. 576, 585, referring to the action of the officers of the department pending proceedings in court, " after the decision they are governed by it. Before the decision, once the proceeding is initiated, their function is suspended."

It is suggested by counsel that the abandonment by the owners of the Tyler location of any claim to the disputed territory was in effect a waiver of the adverse claim within the language of the statute, on the happening of which the right of the land office to proceed was restored. But that is not within the letter, even if within the spirit of the statute. The adverse claim is the claim made by the party opposing the application, and the party to waive a claim is the one who makes it. The obvious meaning is that when an adverse claim is filed — that is, a claim filed by some one opposing the application in whole or in part — the proceedings in the land office shall be stayed until the determination of the dispute by the court in which the action is brought, or the party who has presented such adverse claim shall have in some way waived his opposition to the application. There was no waiver on the part of the parties who filed this adverse claim, and the only

way in which any waiver is claimed to have been made was by a proceeding on the part of the applicants in the land office, and every proceeding there was, as we have seen, directed to be stayed. It is doubtless true that if, notwithstanding the pendency of such an action, the land office accepts a reduced application for ground, no part of which is covered by the adverse claim and in respect to which there is no opposition, and proceeds subsequently upon such amended application to grant a patent, there is no one who can object, for the matter is one wholly of procedure between the United States and the applicant, and the former, by granting the patent, waive any irregularity in the procedure.

But whatever may have been the effect of the amended application of the owners of the Tyler claim in this respect, they were not thereby taken out of the jurisdiction of the District Court, neither was the action in that court abated, nor was it left as one only between the owners of the Last Chance claim and the government. There is no provision in the statute for an action of this kind simply against the government. An applicant for public lands cannot have his right thereto as against the government determined by the courts in a suit against the latter. *United States* v. *Jones*, 131 U. S. 1. The only jurisdiction which the District Court could have was of a controversy between individual claimants, and though its judgment is by statute made conclusive upon the government of the rights of the party in whose favor the judgment goes, it is none the less true that the condition of jurisdiction is a controversy between individual claimants. When an action has been instituted in the court to determine such a controversy, it is not within the competency of the defendant to take himself out of court. A defendant may withdraw his answer and thus let judgment go by default, but he does not thereby deprive the court of a jurisdiction which has been once established. The rule applicable here is no different from that which applies in any other case. When a defendant has by personal service or appearance once been brought into a court, having jurisdiction of the subject-matter, he cannot at his election oust the court of jurisdiction, or prevent the case from

passing to judgment.   Whether he confesses plaintiff's right
or defaults in answer, or files a denial or a disclaimer, is alike
immaterial.   In each and all of these cases the jurisdiction
remains and the court may enter the appropriate judgment.
Where the defendant simply withdraws his answer, as was this
case, the court is under no obligations to inquire whether he
has lost all interest, but may proceed to judgment, and its
judgment is an adjudication of the rights of the plaintiff, as
shown by the complaint and testimony.   Can it for a moment
be supposed that after the entry of this judgment the defend-
ants, treating it as a nullity, could again amend their applica-
tion so as to include all the ground covered by the original
application, and thus the disputed territory, and if such amend-
ment were permitted by the land office, press the application
to success and obtain a patent for the entire claim?   And yet,
if the judgment be a nullity and the defendants out of the
District Court, why might not this be done?   The defendants
by the proceedings which they initiated in the land office com-
pelled the plaintiffs to institute a suit in a court of competent
jurisdiction to enforce their rights.   After such suit has been
commenced and the defendants have been made parties thereto,
and the court has proceeded to judgment, will the defendants
be heard to say that that judgment amounts to nothing?   We
are clearly of the opinion that this cannot be tolerated, that
the judgment was in all respects regular, that it was conclu-
sive as to the particular ground in controversy, and binding
by way of estoppel as to every fact necessarily determined by
it, and that priority of location was one fact so determined.
There was error, therefore, in excluding the record of that
judgment.

Our conclusions in this respect obviate the necessity of con-
sidering another very interesting and somewhat difficult ques-
tion presented by counsel.   It will be seen from the diagram
that according to the original location of the Tyler claim the
vein enters through an end and passes out through a side line,
while by the amended location it passes in and out through
end lines.   Of course, if the latter is a valid location the owner
of the claim would unquestionably have the right to follow

the vein on its dip beyond the vertical plane of the side line. But if it were not, and the original location was the only valid one, has the owner the right to follow the vein outside any boundaries of the claim extended downward? It has been held by this court in the cases heretofore cited that where the course of a vein is across instead of lengthwise of the location, the side lines become the end lines and the end the side lines; but there has been no decision as to what extraterritorial rights exist if a vein enters at an end and passes out at a side line. Is that a case for which no provision has been made by statute? Are the parties left to the old rule of the common law that the owner of real estate owns all above and below the surface, and no more? Or may the court rely upon some equitable doctrine and give to the owner of the vein the right to pursue it on its dip in whatever direction that may go, within the limits of some equitably created end lines?

If the common law rule as to real estate obtains in such a case, then, of course, on the original location the owners of the Tyler claim would have no right to follow the dip of their vein outside the vertical plane of any of its boundary lines; and even if the amended application was perfectly valid the question would arise whether the rights acquired under it related back to the date of the original location, or arose simply at the time of the amendment, in which case there would be no doubt of the fact that the owners of the Last Chance had by years a prior location. However, in the view we have taken of the other question it is unnecessary to consider this.

For the reason given the judgments of the Court of Appeals and of the Circuit Court are

*Reversed and the case is remanded to the latter court with instructions to grant a new trial.*