## LULING OIL & GAS CO. v. MAGNOLIA PETROLEUM CO.

### No. 5392.

Court of Civil Appeals of Texas. Texarkana.

Nov. 21, 1939.

Rehearing Denied Jan. 11, 1940.

R. T. Jones, of Henderson, and George Cannon and C. W. Trueheart, both of San Antonio, for appellant.

Roy C. Ledbetter and W. H. Francis, both of Dallas, Brachfield & Wolfe, of Henderson, Thompson & Barwise, of Fort Worth, and P. A. Sanders, of Nacogdoches, for appellee.

HALL, Justice.

Appellant, plaintiff below, brought this suit in trespass to try title in the District Court of Rusk County against appellee and others for title and possession of the ⅞ leasehold interest in 10.67 acres of land, a part of the McCabe Survey located in said county. Situated on the disputed tract of land are three producing oil wells. It was alleged by appellant, hereinafter referred to as Luling, that the judgment in the cause of Still v. Barton, No. 8718, theretofore rendered by the District Court of Rusk County and affirmed on appeal, fixed the division line between the leasehold claimed by the parties to this appeal. Still was the fee owner of the 100 acres, more or less, to the north which appellee, hereinafter referred to as Magnolia, held a mineral lease; and Barton was the fee owner of the sixty acres, more or less, joining Still on the south, on the north fifteen acres of which Luling claimed a mineral lease. Neither Luling nor Magnolia were parties to that suit, but Luling alleged "both plaintiff (Luling) and defendant (Magnolia) if not nominally parties to said final judgment (Still v. Barton) were nevertheless virtually represented in said cause wherein the north line of the Virgil Barton tract was adjudged as hereinbefore shown and said judgment is still conclusive against them as to its location on the basis of res adjudicata and also upon the basis of judicial estoppel"; that the Magnolia connived with the plaintiffs in the Still v. Barton suit, and "that they (Magnolia) had full knowledge of said suit, that they (Magnolia) were one of the instigators of said suit, and that they (Magnolia) furnished financial and legal assistance in the prosecution of said suit, and were actually, secretly, if not openly, a party thereto." It was also alleged by Luling that the judgment of the appellate court in the case of Still v. Barton, No. 8718, hereinafter referred to as the Still-Barton judgment, was stare decisis of the location of the dividing line between their respective leaseholds.

The Magnolia answered by general denial, plea of not guilty, and specially pleaded the 3, 5, 10, and 25 years statutes of limitation with respect to their leasehold, and alleged: "That the defendant relied upon title to it and recognition by the plaintiff and its predecessors in title of the fence built about 1927 as a boundary line between the oil and gas leasehold estates claimed by the plaintiff and this defendant. That on or about July 8, 1932, the plaintiff, Luling Oil & Gas Company, entered into a settlement and judgment in cause No. 8718 and 9366, severed therefrom, recognizing and agreeing to such boundary line between the leasehold estates as being along said fence. That in such settlement the plaintiff agreed to such line and in addition allotted the F. A. Taylor and P. A. Sanders a 2.34 acre tract of the leasehold south of such fence in return for a settlement of a claim of plaintiff to its leasehold on the two remaining tracts of 2.34 acres just to the east and to the west of said tract allotted to F. A. Taylor and P. A. Sanders, all of which tracts were south of the fence built in 1927. That the plaintiff, Luling Oil & Gas Company, prior thereto and at said time and subsequent thereto was not claiming any oil and gas leasehold north of said fence, but the parties with whom said Luling Oil & Gas Company settled the leasehold estate were claiming a tract south of said fence."

It also alleged improvements in good faith. By cross action Magnolia brought a trespass to try title action against Luling, and also relied upon the several pleas of limitation under statutes.

By trial amendment Luling alleged: "In the alternative, that if defendant Magnolia Petroleum Company or defendants Taylor, Sanders and Still (parties joined as defendants with Magnolia but not parties to this appeal), were otherwise entitled to recover any part of the area described and identified by their respective cross actions, then plaintiff says that on or about July 8, 1932, it was lawfully seized and possessed of the oil and gas leasehold estate, claiming same under judgment of that date in cause No. 9366, styled F. A. Taylor et al v. Luling Oil & Gas Company, by virtue of which it acquired all such title then held by the defendants F. A. Taylor and P. A. Sanders, in addition to the title claimed under V. H. Barton as asserted in its second amended original petition in and to the following two described tracts of land."

Then follows a description of the two small tracts of land recovered under the judgment referred to above, and which judgment will be referred to as the judgment in severed cause, which, together with the Still-Barton judgment, will be discussed hereafter. At the close of the testimony the district judge instructed a verdict for Magnolia. Judgment was entered for Luling, however, for the two small tracts claimed by it immediately south, and for the Magnolia for the disputed leasehold north of the line marked J–K, the "old fence" on the following plat:

fence" and designated on the plat F–C–J–K–L, amounting to fifteen acres, reserving to itself the ⅞ mineral leasehold estate in said tract F–C–J–K–L as shown on the plat. This quitclaim deed from Magnolia to Sanders and Taylor described last above contains the following recitation: "The acceptance of this deed shall constitute on the part of the grantee, his heirs and assigns, a relinquishment of any right, title, and claim to the oil, gas and mineral leasehold estate in and to the land covered by the grantors lease or leases lying North of said line as herein defined." The above as-

In November 1930, the leasehold covering C. C. Still's 100 acres of land was assigned to the Magnolia. On June 12, 1931, D. E. Jernigan and wife, remote grantors and former owners of the Still 100-acre tract, by quitclaim deed conveyed to Dr. J. R. T. Barton whatever interest they owned, whether by deed or by limitation, in excess of the 100 acres previously conveyed by them to F. A. Taylor and now owned by Still. On June 26, 1931, Dr. Barton conveyed all interest acquired by him from Jernigan and wife to the Magnolia. On July 14, 1931, F. A. Taylor and P. A. Sanders assigned an oil and gas lease to Magnolia covering fifteen acres called to be off the south end of the Still 100-acre tract which they had theretofore on April 16th received from C. C. Still and wife and which included the same leasehold in controversy here as described in Luling's amended petition. On July 15, 1931, Magnolia by quitclaim deed assigned to F. A. Taylor and P. A. Sanders all leasehold interest of the "original lessee" covering the land lying south of the line marked "old fence" on the plat, and all interest it had in the land itself lying north of the "old

signments and quitclaims were duly filed for record and included within their description the land in controversy here.

Luling's leasehold comes from V. H. Barton and wife, fee owners of the sixty acres, more or less, shown on the plat, through assignment from H. K. Spear and the judgment in the severed case No. 9366.

On August 13, 1931, C. C. Still, F. A. Taylor and P. A. Sanders filed suit in the District Court of Rusk County in the form of trespass to try title against V. H. Barton and numerous other persons, including the Luling, for title and possession of a tract of land including the same land in controversy here, said suit being numbered 8718 (Still-Barton suit), and in February 1933, judgment was rendered by the district court in that suit fixing the division line between the Still 100-acre tract on the north and the Barton 60-acre tract on the south, as C–G on the plat. On appeal, that judgment was affirmed October 11, 1934 (Tex.Civ.App., 76 S.W.2d 783), and writ of error was dismissed February 13, 1935. Thus was fixed permanently by judgment

in that case the division line between the fee owners of the Still 100-acre tract on the north and the Barton 60-acre tract on the south. On June 25, 1932, Luling, F. A. Taylor, and P. A. Sanders filed their joint motion for severance in cause No. 8718, alleging therein "That the said plaintiffs (Taylor and Sanders) on the one hand and defendant (Luling) on the other, are the claimants to the entire oil and gas leasehold estate (⅞ working interest) in and to the following described portion of the land involved in this action." Then follows a description of the leasehold shown as Y–J–K–H on the plat which includes the land lying between the "old fence" and the diagonal line L–Y claimed by Sanders and Taylor through assignment from Magnolia and being a part of the land involved in this suit. In said motion to sever it was alleged, further:

"That no other party to this suit, either plaintiff, defendant or intervenor, have or claim any character of interest in and to the oil and gas leasehold estate in said land, specifically described above; and the movants herein are the sole and only persons who have or claim any interest in the said oil and gas leasehold estate.

"That a separate and distinct cause of action and controversy exists as between the parties to the Motion as to said Oil and Gas Leasehold Estate, and the issues and cause of action between movants herein may be severed from the remainder of this suit, and the parties to this Motion allowed to dispose of the same as may appear proper as may be required under the circumstances; and that such separate and distinct cause of action and controversy may be more effectually tried and determined by separately trying the same, inasmuch as no other party to this suit has or claims any right or interest in and to the Oil and Gas Leasehold Estate on said 9.81 acre tract, above described; and inasmuch as the cause of action and controversy between movants herein, involving said Oil and Gas Leasehold Estate, is wholly unrelated to the claims, rights and titles asserted by the other parties to this suit."

On the same day the court granted the motion of severance, finding in part: "And the court having heard the evidence offered in support of said Motion, and having fully inquired into the same, and having given due consideration thereto, here now finds that no party to this suit, except those joining in said Motion, has or claims any character of interest in and to the Oil and Gas Leasehold Estate in said 9.81 acres of land, and that the issues and controversy between said movants, involving said Oil and Gas Leasehold Estate, are severable from the remainder of this cause of action."

The severed cause was by the court ordered docketed as a separate cause of action to be numbered 9366 and styled F. A. Taylor et al. v. Luling Oil & Gas Company. On the same day, June 25, 1932, judgment was entered in the severed cause, which was amended July 8, 1932, dividing the land south of the "old fence", Y–J–K–H, into three equal tracts, numbered 1, 2 and 3, on the plat, Numbers 1 and 3 being adjudged to Luling and Number 2 being adjudged to Sanders and Taylor. The description of tract No. 3 being as follows:

"East One-Third: 2.34 acres of land out of the 6.72 acres Still-Barton tract, a part of the Meredith McCabe Survey in Rusk County, Texas, and described by metes and bounds as follows:

"Beginning at a stake on the South side of creek where the present fence intersects the East line of the Mary Ann Wilcoxon 200 acres homestead tract, 1878 feet South of the N. E. corner of the C. C. Still 100 acre tract, witnessed by S. G. 24″ dia. 'X'; thence S 89 Degs 24′ W with said fence 342 feet to stake for corner; thence S 0 degs 46′ W 270 feet to the South line of said 6.72 acres tract; thence N 89 degs 24′ East 342 feet to V. H. Barton's East line; thence N 0 degs. 46′ E 270 feet to the place of beginning, containing 2.34 acres of land, more or less."

After the judgment in the severed cause was entered Luling had no further connection with cause No. 8718 in the trial court. It is undisputed that Luling's attorneys gave assistance to the appellees in that case in the appellate courts and that it, Luling, contributed $200 towards the expense of the Still-Barton case. Although alleged that Magnolia was a virtual party to the Still-Barton suit No. 8718, there is no evidence in this record in support of said allegation, and we think it can be said from the record as a whole that Magnolia was not connected directly or indirectly with the prosecution or defense of the Still-Barton cause No. 8718.

Each party to this appeal contends that it was entitled to an instructed verdict; that the rights of each were fixed under all the facts as a matter of law. The lower

court shared this latter view, and in this we think it was correct. The question, then, is: In whose favor should the instructed verdict have been given? A correct answer to this question will undoubtedly be decisive of the controversy here. Stated another way, the Luling contends that the Magnolia is estopped in this action by the judgment in the Still v. Barton case, No. 8718; and the Magnolia contends that the Luling is estopped by the judgment in the severed cause, No. 9366.

In our opinion, the Still-Barton judgment is not binding on the Magnolia in establishing the south boundary line of its leasehold for two reasons: (1) It was not a party to that judgment, either directly or indirectly; and (2) that judgment was not rendered until some seventeen months subsequent to the date of the last transfer, that of Taylor and Sanders, of the disputed leasehold into the Magnolia. Freeman on Judgments (5 Ed.) vol. 1, sec. 440, par. 966. There can be no doubt but that the Still-Barton judgment was effective in fixing the dividing line between Still's land on the north and Barton's land on the south, and was therefore binding upon them as fee owners and their privies who acquired an interest in their lands after the date of that judgment.

Then the question is, What was the effect of the severed judgment, No. 9366, between Taylor, Sanders, and Luling, rendered some six or seven months before the judgment in the Still-Barton suit, on the subject matter of this cause? It was stated in their joint motion to sever that they were the only parties to the Still-Barton suit, No. 8718, who claimed an interest in the leasehold in the land south of the "old fence" involved in that suit. In the Still-Barton suit, No. 8718, it was alleged, in the original petition as well as the first amendment thereto, both filed before cause No. 9366 was severed, that C. C. Still was the owner of the fee simple title and P. A. Sanders and F. A. Taylor were the owners of the minerals and leasehold rights in and to the land in controversy amounting to fifteen acres of land off the south end of the Still tract and which included the tract in controversy in this suit and the land included in the severed suit north of line L-Y on the plat. The description of the land in the severed suit, the leasehold rights to which was adjudged by the severed judgment, has as its north line K-J, marked "old fence" on the plat, and constituted the

north boundary line of the leasehold then claimed by Luling. It must be remembered that the act of severance was voluntary on the part of Luling, and after the severed judgment was entered it was dismissed from the Still-Barton case. The present suit is between the same parties named in the severed judgment with the Magnolia added, and has for its purpose the fixing of the north boundary line of Luling's leasehold. This time it is sought to fix it at C-G on the plat. The Magnolia, assignee of Taylor and Sanders of the leasehold in controversy, urges that Luling is estopped by the severed judgment fixing the "old fence" shown on the plat as its north line and can not again come into court and insist that its north line is at C-G on the plat and not the "old fence" as found by the severed judgment.

With this contention we agree. In Mr. Freeman's very famous work on Judgments (5 Ed.) vol. 2, p. 1462, Sec. 692, it is said: "It is not necessary to the conclusiveness of the former judgment that the issue should have been taken upon the precise point which it is proposed to controvert in the collateral action. It is sufficient if that point was essential to the former judgment." And the same author in the same volume at page 1452 says: *"The judgment estops the parties as to all issuable matter contained in the pleadings,* though not issuable in the technical sense. It is conclusive as to all matters within the scope of the pleadings which are material and relevant and were in fact determined." And further, at page 1466 of the same volume it is said: "Where an adjudication is predicated upon the existence or non-existence, or the validity or invalidity of a contract, deed or similar instrument, it is ordinarily regarded as res adjudicata upon this matter when the same issue arises in a subsequent action though upon a different cause of action based upon the same contract or one of the same series. And the same is true with respect to an adjudication based upon a particular construction of such a contract or instrument."

Cited in support of the above text is the case of Shook v. Shook, Tex.Civ.App., 145 S.W. 682, 699, 703, wherein it is said: "* * * Whether the property in question in this suit was the separate property of Carrie B. Shook or the community property of herself and her husband, J. O. Shook, was a question to be determined in the divorce suit, and if the defendant, J.

O. Shook, had any claim against the community estate of himself and wife or lien against said property for community funds expended by him in the erection of improvements thereon, such claim might and should have been pleaded, and, if it was not, the judgment rendered in said suit definitely and finally negatives the existence of any such claim, and bars a subsequent action upon it. To hold such a claim against the wife in reference to the common property or her separate lands, which was known to exist and which entered into and affected the very matter in controversy, and not assert it in a suit for partition, 'would be inconsistent with what was there determined.' This view is sustained by the case of Moor v. Moor, 31 Tex.Civ.App. 137, 71 S.W. 794, in which a writ of error was denied by the Supreme Court. *That the plaintiff's claim, however, to a lien upon the property in controversy to secure a reimbursement of his one-half of the amount of the community funds expended in building the house upon said property was directly put in issue in the divorce suit is manifest from the allegations of his petition filed in this suit, and he was properly denied the right by the action of the district court to relitigate that matter in this action."* (All italics ours.)

See also Whitaker v. McCarty, Tex.Com. App., 221 S.W. 572; Metropolitan Life Ins. Co. v. Pribble, Tex.Civ.App., 130 S.W.2d 332, writ refused; Tompkins v. Hooker, Tex.Civ.App., 200 S.W. 193; Cooper v. H. L. Hunt, Tex.Civ.App., 87 S.W.2d 763; Carter v. Bacle, Tex.Civ.App., 94 S.W.2d 817, writ dismissed; Loving County v. Higginbotham, Tex.Civ.App., 115 S.W.2d 1110, writ dismissed; Bauer v. Taylor, Tex. Civ.App., 118 S.W.2d 826, writ refused, and cases there cited.

When the pleadings in the Still-Barton case together with the agreed motion to sever are looked to, it is clear that one of the principal objects sought to be accomplished in said severed suit was the fixing of a north boundary to the leasehold interest of Luling in the land in controversy in the Still-Barton suit. And when this was accomplished and the compromise effected by the severed judgment, Luling was dropped from the Still-Barton case, but the other parties to the severed judgment, Sanders and Taylor, continued their connection with that case. For Luling to secure relief in this case, it would be necessary to change the north line of its lease-

hold as fixed by the severed judgment at J–K, "old fence" on the plat, to a line still further north shown as C–G on the plat. This, of course, would put that issue, that is, the north boundary line of its leasehold, to trial twice between the same parties and their privy (Magnolia), and would result in overturning by a judgment in this case the judgment of the District Court of Rusk County in the severed cause. Undoubtedly the judgment rendered in the severed cause was the result of a compromise, as shown upon its face, but that fact would not detract from its binding force.

"The fact that the particular decree (the severed judgment in this instance) was rendered in a friendly litigation where no real contest took place is of no importance. The conclusiveness of the adjudication depends upon the source from which it came and the same is determined, and not upon the violence of the controversy. If the parties by their agreements and confession dispensed with the necessity for offering an array of evidence the issue to be determined was not for that reason robbed of its importance or altered in its nature. Tompkins v. Hooker, supra, citing Richardson v. Trout, Tex.Civ.App., 135 S.W. 677; Last Chance Mining Co. v. Tyler Mining Co., 157 U.S. 683, 687, 15 S.Ct. 733, 39 L.Ed. 859."

There can be no doubt that Magnolia knew of the severed judgment and interested itself in the entry thereof, for it is shown without dispute that Wallace Hawkins, attorney for Magnolia, on July 8, 1932, after the original judgment in the severed case of date June 25, 1932, had been entered, drafted field notes to a corrected judgment, which was entered with the consent of Luling's attorney, reducing the total acreage in the original judgment from 9.81 to 6.72, and calling for said land to be out of the south portion of the east 100 acres, more or less, of the Wilcoxon homestead tract (Still tract). Magnolia acted upon the corrected judgment. Immediately after its entry it paid to Sanders and Taylor the balance of the purchase price for the leasehold theretofore conveyed to it by them.

As evidence of the claim of Luling the record shows that on August 11, 1931, eleven months before entry of the judgment in the severed cause, it made application to the Railroad Commission for permit to drill two wells on its small tract of land lying south of the "old fence", and on its

plat accompanying said application it shows the land lying to the north of the "old fence" on our plat as belonging to C. C. Still, and the oil well 175 feet north of said "old fence" as belonging to Magnolia. Said plat also shows that in this same tract the acreage called for is 15.5 but the "actual" acreage is 6.72, the exact amount of acreage called for in the three blocks Nos. 1, 2 and 3, later awarded to the parties in the corrected judgment in the severed cause. On July 16, 1932, eight days after entry of corrected judgment in the severed cause, a second application was made by Luling to the Railroad Commission for permit to drill its first well on tract No. 3 awarded to it by the judgment in the severed cause (the first application of August 11, 1931, having been withdrawn), and on the plat accompanying said application the leasehold north of the line marked J-K, "old fence" on our plat, is designated "Magnolia Petroleum Company (C. C. Still lease)", and oil well No. 4, 175 feet north of said "old fence" is also shown. On October 4, 1932, application to the Railroad Commission for permit to drill well No. 2 was made by Luling, and on the plat accompanying that application is shown "Well No. 1 Magnolia Petroleum Company" which is shown to be 175 feet north of "old fence" on our plat. On October 5, 1932, Hon. Thomas Y. Banks, attorney of Tyler, Texas, representing Luling at the time of entry of the judgment in the severed cause, and whose employment continued until early in 1933, wrote the following letter to the Oil and Gas Division of the Railroad Commission:

"Banks & Banks
"Attorneys and Counsellors
"Tyler, Texas.
"October 5, 1932.
"Railroad Commission of Texas,
"Oil & Gas Division,
"Austin, Texas.
"Attention: Mr. J. T. Elliott.
"Gentlemen:

"In regard to the application of Luling Oil & Gas Company for Well No. 1 Virgil Barton 2.34 acres out of the Meredith McCabe Survey, in Rusk County, Texas, we beg to hand you herewith a new application to take the place of the first application from which you will note that the well has been relocated in the center of the tract.

"As to the owners of the leases off-setting the location of Well No. 1, Magnolia Petroleum Company is a lease owner to the North, East and South, and T. W. Murray of Overton, Texas, is the lease owner to the West.

"We also inclose herewith application for well No. 2, Virgil Barton Tract, Meredith McCabe Survey, Rusk County, Texas, comprising 2.34 acres, and which is located on a separate tract from Well No. 1, as you will note from the plat. The off-set lease owners of Well No. 2 are Magnolia Petroleum Company on the North and South, and T. W. Murray of Overton, Texas, on the East, and Humble Oil & Refining Company on the West.

"It is my understanding that at the time of the granting of a permit for the drilling of a well No. 1 on the T. W. Murray Tract, the matter of ownership was very thoroughly gone into.

"Yours respectively,
"Thomas Y. Banks,
"Thomas Y. Banks.
"Received Oct. 7, 1932.
"TYB:JHF        Oil & Gas Division."
"Enclosure.

When Banks as attorney for Luling wrote the above letter he was in possession of a supplemental abstract and had been for more than a month, which supplemental abstract showed all assignments and quitclaims to the Magnolia of the land north of the line marked J-K, the "old fence" on our plat.

The first application for permit by Luling of August 11, 1931, nearly eleven months before judgment in the severed cause wherein it is stated that actual acreage owned by Luling in the McCabe Headright was 6.72 acres, the exact amount awarded by the corrected judgment in the severed cause, was a clear admission by it that the extent of its leasehold interest in that vicinity amounted to just that acreage and no more. And the other applications by Luling for permits to drill oil wells Nos. 1 and 2, and the plats accompanying same, together with the letter by its attorney, Banks, to the Railroad Commission after the entry of the corrected judgment in the severed cause and while he was in possession of the supplemental abstract showing all claims of the Magnolia, show the extent of Luling's claim both before and after the entry of the severed judgment, and also shows the construction it placed upon said judgment in fixing line J-K, the "old fence", as the north line of its claim.

While Luling's construction of the severed judgment would not change the meaning of its clear and unambiguous terms, it would form the basis of an estoppel very effectively when, as in this case, it is shown without dispute that immediately after the entry of the judgment in the severed cause, as before stated, and on the strength thereof, the Magnolia paid the remaining purchase price to Taylor and Sanders for their claim north of the line marked J–K, the "old fence" on our plat. And all these circumstances taken in connection with the testimony of Smith, vice-president and treasurer of Luling, during the period covered by all these transactions, and especially while Magnolia was drilling some of its oil wells north of the "old fence" and on the land here in dispute before this case was filed, to the effect that he saw Magnolia drilling some of its wells and made no protest, is sufficient, in our opinion, to work an estoppel against Luling, aside from the force of the severed judgment, from claiming any leasehold interest north of line J–K, the "old fence" shown on our plat.

"The practical interpretation which the parties, by their conduct, have given to a written instrument in cases like this, is always admitted, and is entitled to weight. There is no better test of the intention of the instrument. None are less likely to be mistaken. There is no danger of too large an admission. Safer testimony can hardly be presented in the relation to any transaction occurring in human affairs." Cavazos v. Trevino, 73 U.S. 773–775, 785, 18 L.Ed. 813, 815.

■ But we do not base our holding in this case on estoppel aside from the judgment. It is our opinion that under the undisputed testimony in this record and the circumstances surrounding the parties, that Luling is estopped by the corrected judgment in the severed cause entered July 8, 1932, from now asserting that its leasehold interest extends north of the "old fence," which is the north line fixed in that judgment. And for this reason it is our opinion that the trial court was correct in peremptorily instructing the jury in favor of Magnolia Petroleum Company. The conclusion expressed above renders a discussion of the other assignments brought forward in this appeal unnecessary.

The judgment of the lower court is in all things affirmed.